**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

| | |
|---|---|
| **In re:** | **Chapter 11 (Subchapter V)** |
| **GILLIAN JORDON aka GILLIAN MARGARET.** | Case No. 1-22-40568 (JMM) |
| **JORDON-DE VERTEUIL,** | |
| | **Hon. Jil Mazer-Marino** |
| **Debtor.** | |

-------------------------------------------------------------------X

**DEBTOR'S FOURTH AMENDED SUBCHAPTER V**
**PLAN OF REORGANIZATION (SALE PLAN)**
*Dated: New York, New York — June 8, 2026*

Gillian Jordon, also known as Gillian Margaret Jordon-De Verteuil (the "Debtor"), the individual debtor and debtor in possession herein and the plan proponent under 11 U.S.C. § 1189(a), respectfully proposes this Fourth Amended Subchapter V Plan of Reorganization (the "Plan"). This Plan supersedes all prior plans filed in this case, including the Amended Subchapter V Plan dated April 23, 2025 (ECF No. 166).

This is a sale plan. Because the equity in the Debtor's residence at 455 Macon Street, Brooklyn, New York 11233 (the "Real Property" or "Home") substantially exceeds the total of all claims against the estate, the Plan is funded principally by the sale of the Real Property, to be completed on or before December 31, 2026. The Plan pays every allowed claim in full — one hundred cents on the dollar — and returns the surplus to the Debtor. Capitalized terms not otherwise defined have the meanings given in the Bankruptcy Code.

The Debtor has navigated this case through serious personal hardship. She underwent chemotherapy for cancer, which is now in remission; her mother is presently hospitalized and terminally ill. The orderly sale process set forth in this Plan reflects the Debtor's good-faith effort to pay every creditor in full while she manages these difficult circumstances.

## BACKGROUND FOR CASES FILED UNDER SUBCHAPTER V

### A. Description and History of the Debtor's Business

The Debtor is an individual. Her principal business is the operation of a day-care center in New York City under the corporate entity ABC Ninos, Inc. ("ABC"). The Debtor is presently the Director of ABC, from which she earns a salary of approximately $10,000 per month; after her ordinary and necessary living expenses, however, her projected disposable income is not more than approximately $2,000 per month. ABC employs approximately twelve people. The Debtor's assets consist of the Real Property, her interest in ABC, and a vehicle.

The Debtor commenced this case on March 23, 2022 (the "Petition Date") by filing a voluntary petition under Chapter 11, Subchapter V, of the Bankruptcy Code. The case was filed to

stop a foreclosure auction of the Home that had been scheduled by the secured lender, World Business Lenders / WBL SPE III, LLC ("WBL"), which held a judgment of foreclosure and sale. The foreclosure arose from a predatory loan — described below — that the Debtor disputed as usurious and unenforceable.

**Predatory "rent-a-bank" lending.** The Debtor was the victim of a predatory lending scheme, as set forth in the adversary complaint she filed in this Court (Adv. Pro. No. 1-23-01064). In or about January 2016, the Debtor — a minority small-business owner who operated a child-care center — was solicited by a broker (a so-called "bird-dog") acting for World Business Lenders, LLC ("WBL") and induced to sign a business loan with a stated principal of $275,000 and an effective interest rate of approximately 116% per year, secured by a mortgage on her Home. Although the loan was papered in the name of The Bank of Lake Mills, a Wisconsin state-chartered bank, WBL was the true lender.

As the Debtor alleged, WBL used a "rent-a-bank" scheme to evade New York's civil and criminal usury caps: WBL solicited the borrower, prepared and executed the loan documents, and funded and controlled the transaction, but had the loan nominally issued in the name of The Bank of Lake Mills so that WBL could claim the benefit of federal preemption and rate exportation and thereby escape state usury limits; within days, WBL took an assignment of the note and mortgage. The Debtor alleged that this structure — modeled on payday-lending schemes — targeted vulnerable minority borrowers, and that the resulting usurious debt is an unlawful debt that is uncollectible. She asserted claims under the civil RICO statute (18 U.S.C. § 1964(c), premised on the collection of an unlawful debt under § 1961(6)), the Equal Credit Opportunity Act, and New York usury law (Gen. Oblig. Law § 5-501; Banking Law § 14-a; Penal Law § 190.40), together with an objection by recoupment to WBL's proof of claim. Through default interest and charges, the $275,000 loan had swelled into an asserted claim exceeding $2.2 million that consumed the entire equity of the Home.

The Debtor and WBL have since fully resolved their disputes. On August 13, 2023, the Debtor commenced an adversary proceeding against WBL and related parties (Adv. Pro. No. 1-23-01064), asserting, among other things, claims under the civil RICO statute. That adversary proceeding was settled pursuant to a Stipulation (the "Stipulation") negotiated with the assistance of the Subchapter V Trustee. By Order entered November 12, 2025 (the "WBL Order"), the Court approved the Stipulation, directed that it be incorporated into and made a part of any confirmed plan, provided that the Stipulation shall replace WBL's Proof of Claim No. 8, and marked the adversary proceeding closed. Under the Stipulation, WBL holds an allowed secured claim of $450,000.00 (the "Agreed Claim") in full satisfaction of its former $2,262,801.39 claim. The Stipulation is annexed to this Plan as Exhibit B and is incorporated herein by reference.

Why this is a sale plan. The Debtor cannot fund the lump-sum, effective-date payments that a retain-and-pay plan would require. As the United States (on behalf of the Internal Revenue Service) and the New York State Department of Taxation and Finance made clear in their

objections to the prior plan, the secured and priority tax claims must be paid in full, with interest, no later than five years after the Petition Date — that is, by March 23, 2027 — and the Debtor does not have the cash to do so from operations. See 11 U.S.C. §§ 1129(a)(9)(C)–(D), 1191(a). The Real Property, however, holds equity well in excess of all claims. Selling the Home therefore pays every creditor in full — the taxing authorities, the mortgagees, and general unsecured creditors alike — well within the statutory deadline, and leaves a surplus for the Debtor. The Court and parties in interest have pressed for a sale. To realize the maximum price, the Debtor will complete limited, value-enhancing repairs and then market and sell the Home in an orderly manner, subject to a firm outside closing date of December 31, 2026 and a court-supervised auction backstop that guarantees consummation.

**Current procedural posture.** The case was reassigned to the Honorable Jil Mazer-Marino effective March 1, 2026 (ECF No. 182), and is now before that Court (Courtroom 3529). The adversary proceeding against WBL (Adv. Pro. No. 1-23-01064) was closed on January 16, 2026. A status conference, together with the long-pending motion of Nationstar Mortgage LLC to dismiss the case (ECF No. 56), is scheduled for June 10, 2026 at 10:00 a.m. That hearing is not the confirmation hearing on this Plan; because this Plan supersedes the Debtor's prior plan, the Debtor will request that the Court fix, by separate order, a hearing to consider confirmation of this Plan together with a deadline for the submission of ballots. The Debtor has separately objected to the claims of T-Mobile (Claim No. 5), Nissan Motor Acceptance (Claim No. 10), and LVNV Funding (Claim No. 11) (ECF Nos. 188–190), returnable July 15, 2026. This Plan is submitted to resolve all of these matters by paying every allowed claim in full from the proceeds of the sale of the Home.

## B. Liquidation Analysis

To confirm the Plan, the Court must find that each holder of a claim that has not accepted the Plan will receive at least as much under the Plan as it would in a hypothetical Chapter 7 liquidation. 11 U.S.C. § 1129(a)(7) (incorporated by § 1191(a)). Under this Plan, every allowed claim is paid in full, in cash. Because no creditor may receive more than payment in full of its allowed claim, the Plan necessarily provides each holder at least as much as it would receive in a Chapter 7 case. Moreover, a Chapter 7 trustee conducting a forced or expedited sale — without the repairs, orderly marketing, and timing contemplated by this Plan — would likely realize a lower gross price, and would incur a statutory trustee commission under 11 U.S.C. § 326 together with additional trustee professional fees, thereby reducing distributions. The Plan therefore satisfies the best-interests-of-creditors test. A summary sale and distribution analysis is set forth in Exhibit A.

## C. Ability to Make Plan Payments and Feasibility

The Plan is funded by the sale of the Real Property. Based on a projected sale price of approximately $2,100,000 to $2,200,000 (and, on a conservative basis, not less than $2,100,000), the net proceeds after customary costs of sale will be more than sufficient to pay all administrative, secured, priority, and general unsecured claims in full, with a substantial surplus to the Debtor.

See Exhibit A. Pending the closing, the Debtor will remain current on the first mortgage and will fund the interim payment to WBL ($1,000 per month) and her post-petition taxes from her income; after her ordinary and necessary living expenses (including the mortgage on her residence), the Debtor's projected disposable income, as defined in 11 U.S.C. § 1191(d), is not more than approximately $2,000 per month, which is sufficient to fund these interim obligations. The payment of all allowed claims in full is funded not by the Debtor's income but by the proceeds of the sale of the Real Property — all parties in interest will be paid in full from the sale of the Home. Feasibility is assured because the Plan is funded by a discrete asset whose value exceeds all claims by a wide margin, and because the court-supervised auction backstop in Section 7.06 guarantees that the sale will be consummated by the outside date. Because the value of the property distributed under the Plan (the net sale proceeds, which pay every allowed claim in full) far exceeds the Debtor's projected disposable income over the applicable three-to-five-year period, the Plan satisfies 11 U.S.C. §§ 1129(a)(11) and 1191(c)(3). The Debtor's monthly operating reports on file with the Court further demonstrate the Debtor's ability to meet her post-petition obligations pending the sale.

## ARTICLE 1: SUMMARY

This Plan of Reorganization under Chapter 11, Subchapter V, of the Bankruptcy Code proposes to pay the creditors of the Debtor in full from the proceeds of the sale of the Debtor's real property at 455 Macon Street, Brooklyn, New York 11233, to be sold on or before December 31, 2026, supplemented, pending the sale, by the Debtor's income from ABC Ninos, Inc.

The Plan provides for: (i) one class of priority (non-tax) claims; (ii) five classes of secured claims; (iii) one class of general unsecured claims; and (iv) the Debtor's interest in property of the estate. Administrative expense claims and priority tax claims are not classified and are treated in Article 3. All allowed claims — administrative, secured, priority, and general unsecured — will be paid in full (100 cents on the dollar).

All creditors and parties in interest should refer to Articles 3 through 9 of this Plan for information regarding the precise treatment of their claims. Your rights may be affected. You should read these papers carefully and discuss them with your attorney if you have one. (If you do not have an attorney, you may wish to consult one.)

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

**2.01 Class 1:** All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

**2.02 Class 2:** The secured claim of Nationstar Mortgage LLC d/b/a Mr. Cooper (the first mortgage on the Real Property).

**2.03 Class 3:** The secured claim of WBL SPE III, LLC, as fixed by the Stipulation (the Agreed Claim).

**2.04  Class 4:**  The secured claim of the New York State Department of Taxation and Finance (tax warrants).

**2.05  Class 5:**  The secured claim of the Internal Revenue Service (federal tax lien).

**2.06  Class 6:**  The secured claim of Bridgecrest Credit Company, LLC (2018 Nissan Pathfinder).

**2.07  Class 7:**  All general (non-priority) unsecured claims allowed under § 502 of the Code.

**2.08  Class 8:**  The interest of the individual Debtor in property of the estate.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND STATUTORY FEES

**3.01  Unclassified Claims.**  Under § 1123(a)(1), administrative expense claims and priority tax claims are not placed in classes.

**3.02  Administrative Expense Claims.  Each holder of an allowed administrative expense claim under § 503(b) of the Code will be paid in full, in cash, on the later of the Effective Date or the date the claim is allowed by final order, or upon such other terms as may be agreed, and in any event from the proceeds of the sale at closing. Administrative expense claims include: (a) the allowed fees and expenses of the Subchapter V Trustee, Gerard R. Luckman, Esq. (estimated at approximately $30,000, subject to approval under § 330); (b) the allowed fees and expenses of the Debtor's professionals, Dahiya Law Offices LLC (in a sum exceeding $185,000) and The Law Offices of Narissa A. Joseph (estimated to exceed $15,000), in each case subject to approval of the Court; and (c) the post-petition administrative tax claims of the Internal Revenue Service (Claim No. 15, $22,631.18) and the New York State Department of Taxation and Finance (Claim No. 14, $2,841.44), which shall be paid in full at closing with any accrued statutory interest. Pending the closing, the Debtor may pay allowed professional fees in interim installments as approved by the Court, without prejudice to payment in full at closing.**

**3.03  Priority Tax Claims.**  Each holder of an allowed priority tax claim under § 507(a)(8) of the Code — namely, the unsecured priority claim of the Internal Revenue Service ($26,386.15, per Claim No. 7-4) and the unsecured priority claim of the New York State Department of Taxation and Finance ($7,024.40, per Claim No. 1-3) — will be paid in full, in cash, with interest at the applicable statutory rate (for the IRS, the rate under 11 U.S.C. § 511 and 26 U.S.C. § 6621; for New York State, 11% on withholding tax and 9.5% on personal income tax, as applicable), from the proceeds of the sale at closing, and in all events no later than five (5) years after the Petition Date (i.e., by March 23, 2027), in conformity with 11 U.S.C. § 1129(a)(9)(C).

**3.04  Statutory Fees.**  All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date have been or will be paid on the Effective Date. There are no quarterly United States Trustee fees in this Subchapter V case.

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**Class 1 — Priority (non-tax) claims (Unimpaired).** Class 1 is unimpaired. No claims entitled to priority under § 507(a) (other than those treated in Article 3) are known to exist. If any such claim is allowed, it will be paid in full, in cash, on the later of the Effective Date or the date it is allowed by final order.

**Class 2 — Secured claim of Mr. Cooper (Unimpaired).** Class 2 is unimpaired. The first mortgage held by Nationstar Mortgage LLC d/b/a Mr. Cooper (Claim No. 12, $352,264.12) shall be reinstated and shall remain unaltered pending the sale; the Debtor shall remain current on the regular monthly contractual payments through closing. At closing, the allowed secured claim shall be paid in full from the sale proceeds (in the amount of the contractual payoff, including principal, accrued interest at the note rate, escrow advances, and permitted charges through the payoff date), and the mortgage lien shall be satisfied of record. Until paid, the lien remains attached to the Real Property and the proceeds.

**Class 3 — Secured claim of WBL SPE III, LLC (Impaired).** Class 3 is impaired and shall be treated exclusively in accordance with the Stipulation (Exhibit B), as approved by the WBL Order and incorporated herein. WBL holds an allowed secured claim of $450,000.00 (the Agreed Claim), bearing interest at 5% per annum. Pending the sale, the Debtor shall pay WBL $1,000.00 per month as provided in the Stipulation. At the closing of the sale, the Debtor shall pay WBL the entire unpaid balance of the Agreed Claim, together with accrued interest, in full and final satisfaction of WBL's claim and lien (a prepayment expressly permitted by paragraph 1(b)(iv) of the Stipulation), whereupon WBL's lien shall be released. WBL's remedies upon any default, and the limited (non-)retention of jurisdiction by the Court, are governed by the Stipulation. To the extent any provision of this Plan or of any confirmation order conflicts with the Stipulation, the Stipulation controls.

**Class 4 — Secured claim of New York State (Impaired).** Class 4 is impaired. The New York State Department of Taxation and Finance holds an allowed secured claim of $57,274.19, secured by tax warrants (Claim No. 1-3). This claim shall be paid in full, in cash, from the sale proceeds at closing, together with interest at the applicable statutory rate (11% on withholding tax / 9.5% on personal income tax, as applicable), and in all events no later than five (5) years after the Petition Date. Pending closing, the lien attaches to the Real Property and the proceeds.

**Class 5 — Secured claim of the Internal Revenue Service (Impaired).** Class 5 is impaired. The Internal Revenue Service holds an allowed secured claim of $36,546.92 (Claim No. 7-4). This claim shall be paid in full, in cash, from the sale proceeds at closing, together with interest at the rate provided in 11 U.S.C. § 511 and 26 U.S.C. § 6621, and in all events no later than five (5) years after the Petition Date. Pending closing, the federal tax lien attaches to the Real Property and the proceeds.

**Class 6 — Secured claim of Bridgecrest Credit Company, LLC (Impaired).** Class 6 is impaired. Bridgecrest Credit Company, LLC filed a secured claim of $20,268.14, secured by a 2018 Nissan Pathfinder (Claim No. 4). The Debtor has remained current on the contractual

monthly installment payments since the Petition Date, and as a result the remaining balance does not exceed $1,500.00. The Debtor shall retain the vehicle and pay the remaining balance in full (in an amount not to exceed $1,500.00), either through continued contractual installments or, at the Debtor's option, from the sale proceeds, and shall cure any arrears. This claim is paid in full.

**Class 7 — General unsecured claims (Impaired).** Class 7 is impaired and entitled to vote. All allowed general unsecured claims shall be paid in full (100 cents on the dollar), in cash, from the sale proceeds at or promptly after closing. Class 7 includes, without limitation, the claims of Directv, LLC ($679.44, Claim No. 2), Capital One N.A. ($3,461.35, Claim No. 3-2), T-Mobile/T-Mobile USA, Inc. ($87.26, Claim No. 5), Merrick Bank ($450.15, Claim No. 9), LVNV Funding, LLC ($155.19, Claim No. 11), and any allowed unsecured deficiency claim of Nissan Motor Acceptance (Claim No. 10) following surrender of its collateral. The claim of Bayside United Methodist Church (Claim No. 13) was withdrawn by order entered March 11, 2024 (ECF No. 137) and is not classified.

**Class 8 — Debtor's interest in property of the estate (Impaired).** Class 8 is impaired. The Debtor retains her interest in property of the estate. After payment in full of all allowed administrative, secured, priority, and general unsecured claims and the costs of administration and sale, the remaining net proceeds of the sale (the surplus) shall revest in and be distributed to the Debtor, subject to her homestead and other applicable exemptions. The Debtor shall retain and continue to operate ABC Ninos, Inc.

## ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01 Disputed Claim.** A disputed claim is a claim that has not been allowed or disallowed by a final, non-appealable order, and as to which either (i) a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed or may file an objection, or (ii) no proof of claim has been filed and the Debtor has scheduled the claim as disputed, contingent, or unliquidated.

**5.02 Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a disputed claim unless and until such claim is allowed by a final, non-appealable order. Pending allowance, the disputed amount shall be reserved in escrow as provided in Section 7.07.

**5.03 Settlement of Disputed Claims.** The Debtor retains the power and authority to settle and compromise any disputed claim, with Court approval and in compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**5.04 Duplicate Claims.** Proof of Claim No. 6 filed by the New York State Department of Taxation and Finance ($60,006.59) is duplicative of, and has been superseded by, Proof of Claim No. 1 (as thrice amended, currently $64,298.59). Claim No. 6 shall be disallowed and expunged as duplicative, so that the New York State Department of Taxation and Finance is paid only once on account of the liabilities reflected in Claim No. 1.

**5.05  Pending Claim Objections.**  The Debtor has filed objections to the claims of T-Mobile (Claim No. 5), Nissan Motor Acceptance (Claim No. 10), and LVNV Funding (Claim No. 11) (ECF Nos. 188–190), returnable July 15, 2026. Distributions on account of those claims, if any, shall be made only to the extent such claims are ultimately allowed by final order; amounts attributable to disallowed or reduced claims shall be retained by the Debtor.

## ARTICLE 6: EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01  Executory Contracts and Unexpired Leases.**  The Debtor has no executory contracts or unexpired leases to assume. Except for any contract or lease that has been assumed by prior order or that is the subject of a pending motion to assume, the Debtor is conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. Any proof of claim arising from such rejection must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

**7.01  Sale of the Real Property.**  The Plan is implemented through the sale of the Real Property at 455 Macon Street, Brooklyn, New York 11233, free and clear of liens, claims, interests, and encumbrances pursuant to 11 U.S.C. §§ 1123(a)(5)(D), 1123(b)(4), and 1141(c), with all valid liens attaching to the net proceeds of sale in their existing priority. The sale shall be effectuated pursuant to, and authorized by, confirmation of this Plan, and not through a separate sale under section 363 of the Code. The sale and the resulting distributions are the primary means of funding the Plan.

**7.02  Retention of Broker.**  Within twenty-one (21) days after the Effective Date, the Debtor shall apply to retain a licensed real estate broker under 11 U.S.C. § 327 to market and sell the Real Property and to provide a broker's price opinion of value.

**7.03  Repairs and Renovations.**  To maximize the sale price, the Debtor may complete reasonable repairs and renovations to the Real Property, funded from the Debtor's own funds, which repairs shall be substantially completed within ninety (90) days after the Effective Date.

**7.04  Sale Milestones.**  The Debtor shall adhere to the following milestones:

(a)  retain a broker — within twenty-one (21) days after the Effective Date;

(b)  substantially complete repairs/renovations — within ninety (90) days after the Effective Date;

(c)  list the Real Property for sale — on or before September 30, 2026;

(d)  execute a contract of sale — on or before November 15, 2026; and

(e)  close title — on or before December 31, 2026 (the "Outside Closing Date").

**7.05  Approval of Sale.**  The Debtor shall sell the Real Property by private sale to the highest and best offer. The sale is authorized by, and shall be consummated pursuant to, the confirmed Plan;

no separate motion under section 363 of the Code is required. The order confirming the Plan shall constitute the Court's approval of the sale and of the Debtor's authority to sell the Real Property free and clear of liens, subject to entry of a closing-approval order or such notice as the Court may direct.

**7.06  Auction Backstop.**  If a contract of sale has not been fully executed by November 15, 2026, or if the closing has not occurred on or before the Outside Closing Date (December 31, 2026), then the Real Property shall be sold at a court-supervised public auction conducted pursuant to this Plan. The auction shall be conducted by an auctioneer retained by the Debtor promptly, with closing to occur as soon as practicable thereafter, free and clear of liens with all valid liens attaching to the proceeds. The Debtor consents to the entry of an order scheduling and approving such auction upon the filing of a notice that a milestone has not been met, and waives any further notice or hearing as a precondition to the auction beyond that required by the Court.

**7.07  Distribution of Sale Proceeds (Waterfall).**  The net proceeds of the sale shall be distributed at closing or as ordered by the Court in the final approval order in the following order of priority:

(1)  the ordinary and customary costs of sale, including broker's commission, transfer taxes, title and recording charges, and reasonable closing adjustments;

(2)  Class 2 — the Mr. Cooper first mortgage, in full;

(3)  Class 3 — the WBL Agreed Claim (principal plus accrued 5% interest), in full;

(4)  Classes 4 and 5 — the secured tax claims of the New York State Department of Taxation and Finance and the Internal Revenue Service, in full with statutory interest, in their respective lien priorities;

(5)  administrative expense claims — the Subchapter V Trustee's allowed fees, the Debtor's Court-approved professional fees, and the post-petition administrative tax claims of the IRS and New York State, in full;

(6)  priority unsecured tax claims under § 507(a)(8), in full with interest;

(7)  Class 6 — Bridgecrest, to the extent then unpaid;

(8)  Class 7 — general unsecured claims, in full; and

(9)  the surplus, if any, to the Debtor, subject to her exemptions.

To the extent the amount or priority of any lien or claim remains disputed at closing, the disputed amount shall be held in escrow by the Debtor's counsel pending allowance by final order, and the undisputed balance shall be distributed.

**7.08  Interim Payments and Obligations Pending Sale.**  Pending the closing, the Debtor shall: (i) remain current on the Class 2 mortgage; (ii) pay WBL $1,000.00 per month as provided in the Stipulation; (iii) timely pay all post-petition taxes and timely file all required tax returns; and (iv) maintain casualty and liability insurance on the Real Property.

**7.09 Dedication of Funds.** The net proceeds of the sale, together with the Debtor's post-petition earnings to the extent necessary, are dedicated to the payment in full of all allowed claims as provided herein. Because all allowed claims are paid in full, the Plan satisfies 11 U.S.C. § 1191(c).

## ARTICLE 8: GENERAL PROVISIONS

**8.01 Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code apply when terms defined or construed in the Code are used in this Plan.

**8.02 Effective Date.** The Effective Date of this Plan is the first business day following the date that is fourteen (14) days after the entry of the confirmation order. If a stay of the confirmation order is in effect on that date, the Effective Date is the first business day after the stay expires or is otherwise terminated. The Debtor shall file a notice of the Effective Date within three business days of its occurrence, and a notice of substantial consummation within three business days of its occurrence.

**8.03 Tax-Return Compliance.** The Debtor is current with all of her tax-return filing obligations. She has filed all federal and state tax returns required to be filed for all prior years, and her returns for the 2025 tax year are in preparation and will be filed shortly, and in any event on or before the confirmation hearing. The Debtor remains current on all post-petition tax obligations, in satisfaction of 11 U.S.C. §§ 1106(a)(6), 1107(a), and 1129(a)(2).

**8.04 Post-Confirmation Interest on Tax Claims.** Post-confirmation interest shall accrue on, and be paid with respect to, the allowed secured and priority tax claims at the applicable statutory rate (for the IRS, the rate under 11 U.S.C. § 511 and 26 U.S.C. § 6621; for New York State, 11% on withholding tax and 9.5% on personal income tax, as applicable), in satisfaction of 11 U.S.C. §§ 1129(a)(9)(C) and (D).

**8.05 Default and Creditors' Remedies.** In the event of a material default under this Plan that remains uncured for thirty (30) days after written notice of default to the Debtor and the Debtor's counsel: (a) the affected creditor may enforce the terms of the Plan in this Court or in any other court or forum of competent jurisdiction; (b) the Internal Revenue Service and the New York State Department of Taxation and Finance may, in addition to any other remedy, collect the unpaid balance of their respective allowed claims (with statutory interest) through their administrative collection procedures and any other lawful means, in any appropriate forum, as if this case had not been commenced, without further order of this Court; and (c) WBL's remedies upon default are governed exclusively by the Stipulation. Notwithstanding the foregoing, the failure to close the sale by the Outside Closing Date shall trigger the auction backstop in Section 7.06.

**8.06 Severability.** If any provision of this Plan is determined to be unenforceable, that determination will not limit or affect the enforceability and operative effect of any other provision.

**8.07 Binding Effect.** The rights and obligations of any entity named or referred to in this Plan are binding upon, and inure to the benefit of, the successors and assigns of such entity.

**8.08  Captions.**  The headings in this Plan are for convenience only and do not affect its meaning or interpretation.

**8.09  Controlling Effect.**  Except where federal law (including the Code or the Federal Rules of Bankruptcy Procedure) applies, the laws of the State of New York govern this Plan; provided, however, that the Stipulation controls over any conflicting provision of this Plan or of any confirmation order as to WBL's Agreed Claim.

**8.10  Retention of Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction over all matters arising under, arising in, or related to this case and the Plan, including to: (a) determine objections to the allowance of claims; (b) approve and resolve disputes concerning the sale of the Real Property and the distribution of proceeds; (c) determine applications for compensation of professionals and the Subchapter V Trustee; (d) consider any modification of the Plan under § 1193; (e) enforce and interpret the Plan and the confirmation order; and (f) enter a final decree closing the case. Notwithstanding the foregoing, and consistent with the Stipulation, the Court shall not retain jurisdiction with respect to the WBL Agreed Claim, except to enforce the discharge provisions of the confirmed Plan.

**8.11  Status Reports and Final Decree.**  The Debtor shall file a status report no less than every six (6) months after entry of the confirmation order, describing the actions taken toward consummation of the sale and the entry of a final decree. Within fourteen (14) days following full administration of the estate, but no later than eighteen (18) months after entry of the confirmation order, the Debtor shall file, on notice to the United States Trustee, an application and proposed order for a final decree under Bankruptcy Rule 3022.

## ARTICLE 9: DISCHARGE

**Consensual Confirmation (§ 1191(a)).**  If the Plan is confirmed under 11 U.S.C. § 1191(a) (consensual confirmation), then on the Effective Date the Debtor will be discharged from any debt that arose before confirmation, to the extent provided in § 1141(d)(1)(A), except (i) any debt imposed by this Plan and (ii) any debt excepted from discharge under § 523(a) of the Code (subject to Rule 4007(c)).

**Nonconsensual Confirmation (§ 1191(b)).**  If the Plan is confirmed under 11 U.S.C. § 1191(b) (nonconsensual confirmation), confirmation does not discharge any debt provided for in the Plan until the Court grants a discharge upon completion of all payments due under the Plan — which, given that the Plan is funded by the sale, occurs upon consummation of the sale and the distributions provided herein — or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt excepted from discharge under §§ 1192 and 523(a) of the Code.

Because all allowed claims are paid in full under this Plan, no creditor's recovery is diminished by the discharge.

Respectfully submitted,

Dated: New York, New York

June 8, 2026

*/s/gillianjordan*
Gillian Jordon, Debtor and Plan Proponent

*/s/karamvirdahiya*
Karamvir Dahiya, Esq.
DAHIYA LAW OFFICES LLC
Counsel to the Debtor
111 John Street, Suite 1860
New York, New York 10038
(212) 766-8000 | karam@dahiya.law

**EXHIBIT A**

**Liquidation / Sale and Distribution Analysis**

The following summary illustrates the sources and uses of the sale of the Real Property and demonstrates that all allowed claims are paid in full. All figures are approximate and subject to final claim allowance, final payoff statements, statutory interest, Court approval of fees, and actual closing costs. The conservative case (a sale at $2,100,000) likewise pays all claims in full, with a smaller surplus.

| SOURCES | |
|---|---|
| Projected gross sale price (renovated) | $2,100,000.00 – $2,200,000.00 |
| Less: estimated costs of sale (broker, transfer taxes, title) ~7.5% | ($157,500.00) – ($165,000.00) |
| **Estimated net proceeds available for distribution** | **$1,942,500.00 – $2,035,000.00** |
| **USES (paid in full)** | |
| Class 2 — Mr. Cooper, first mortgage (Claim 12) | $352,264.12 |
| Class 3 — WBL Agreed Claim (principal + ~5% interest) | $455,000.00 |
| Class 4 — New York State, secured (tax warrants) (Claim 1-3) | $57,274.19 |
| Class 5 — Internal Revenue Service, secured (Claim 7-4) | $36,546.92 |
| Class 6 — Bridgecrest, Nissan Pathfinder (balance after post-petition payments) | $1,500.00 |
| Administrative — Subchapter V Trustee (estimated) | $30,000.00 |
| Administrative — Dahiya Law Offices LLC (estimated, subject to court approval) | $185,000.00 |
| Administrative — Law Offices of Narissa A. Joseph (estimated, subject to approval) | $15,000.00 |
| Administrative tax — IRS (Claim 15) | $22,631.18 |
| Administrative tax — New York State (Claim 14) | $2,841.44 |
| Priority tax — IRS, § 507(a)(8) (Claim 7-4) | $26,386.15 |
| Priority tax — New York State, § 507(a)(8) (Claim 1-3) | $7,024.40 |
| Class 7 — General unsecured claims (in full) | $4,833.39 |
| **Total uses (approximate)** | **$1,196,301.79** |
| **Estimated surplus to the Debtor (subject to exemptions)** | **$746,198.21 – $838,698.21** |

Best-interests comparison: In a hypothetical Chapter 7 liquidation conducted on the Effective Date, a trustee would sell the Real Property without the benefit of the repairs, orderly marketing, and timing contemplated here, likely at a lower price, and would incur a statutory trustee commission under § 326 (which on a sale of this size could exceed $60,000) plus additional trustee professional fees. Because this

Plan pays every allowed claim in full (100%), no creditor could receive more in a Chapter 7 case than under the Plan. The Plan therefore satisfies the best-interests test of § 1129(a)(7).

<u>**EXHIBIT B**</u>

**Stipulation Resolving Adversary Proceeding and Amending Claim No. 8**

The Stipulation approved by the Order entered November 12, 2025 is incorporated into this Plan by reference and is annexed hereto as Exhibit B. To the extent of any conflict between the Plan (or any confirmation order) and the Stipulation, the Stipulation controls as to WBL's Agreed Claim.

# Exhibit A

Stipulation

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

|  | |
|---|---|
| In re:<br><br>Gillian Jordan<br>Aka Gillian Margaret Jordan-De Verteuil,<br><br>          Debtor.<br><br>---<br><br>Gillian Jordan aka Gillian Margaret Jordan-De Verteuil,<br><br>          Plaintiff,<br><br>v.<br><br>Doug Naidus,<br>World Business Lenders, LLC,<br>Worldwide Land Transfer Inc.<br>WBL SPE III, LLC,<br>The Bank of Lake Mills, and<br>John Does 1-3,<br><br>          Defendants. | Chapter 11 (Subchapter V)<br><br>Case No.: 22-40568-nhl<br><br>Adv. Pro. No.: 1-23-01064-nhl |

## <u>STIPULATION</u>

Debtor Gillian Jordan Aka Gillian Margaret Jordan-De Verteuil ("Debtor"), Doug Naidus ("Mr. Naidus"), World Business Lenders, LLC ("WBL"), WBL SPE III, LLC ("SPE III"), and The Bank of Lake Mills ("BLM"), stipulate as follows:

**WHEREAS,** on or about January 26, 2016, Debtor, on behalf of Noah's Ark Preparatory, Inc. and Noah's Ark Preparatory II, Inc., executed a Business Promissory Note and Security Agreement in favor of BLM in the original principal amount of $275,000.00 (the "Note"); and

**WHEREAS,** to secure the Note, Debtor executed a Continuing Guaranty (Unlimited) in favor of BLM, dated January 26, 2016; and

98043\323499859.v1

**WHEREAS,** to further secure the Note, Debtor executed a Mortgage, dated January 28, 2016, which was recorded against real property located at 455 Macon Street, Brooklyn, New York 11233 (the "Property") on February 18, 2016 in the Office of the City Register of the State of New York under CRFN 2016000054746, and which was subsequently assigned to SPE III (the Note, Guaranty, and Mortgage being the "Loan Documents" that, together with other documents, memorialize the "Loan"); and

**WHEREAS,** a default was declared on the Loan after the failure to tender the payment that became due and payable on April 19, 2016, and a commercial mortgage foreclosure action was commenced in the Supreme Court of the State of New York, County of Kings on July 19, 2016, which was assigned Index Number 512316/2016 and in which Judgment of Foreclosure and Sale was entered on March 18, 2020 (the "Foreclosure Action"); and

**WHEREAS,** the Foreclosure Action was automatically stayed after Debtor filed a Chapter 11 Bankruptcy Petition in the above-captioned case on March 23, 2022 (the "Bankruptcy"), and;

**WHEREAS,** SPE III filed a Proof of Claim on April 25, 2022 in the amount of $2,262,801.39 (the "Full Claim"), which Debtor disputed; and

**WHEREAS,** Debtor thereafter commenced the above-captioned adversary proceeding against Mr. Naidus, WBL, SPE III, and BLM, among other defendants, on August 13, 2023, in which opposed motions to dismiss have been filed and remain pending (the "Adversary Proceeding"); and

**WHEREAS,** Debtor, Mr. Naidus, WBL, SPE III, and BLM, having negotiated a resolution in principle with the assistance of Subchapter V Trustee Gerard Luckman, Esq., now wish to fully memorialize the resolution of any and all differences existing between them concerning the Loan and the Property in the Bankruptcy and the Adversary Proceeding,

2

**NOW THEREFORE,** Debtor, Mr. Naidus, WBL, SPE III, and BLM stipulate and agree as follows:

1. Within thirty (30) days of the date that this Stipulation is fully executed, Debtor agrees to withdraw her prior Chapter 11 Subchapter V Plan and file an Amended Chapter 11 Subchapter V Plan to which this Stipulation shall be appended, which shall include the following treatment of SPE III's claim, and the effective date of which shall be the date of entry of the order confirming same (the "Plan"):

    a. Debtor and SPE III agree that, subject to the conditions below, SPE III shall accept an allowed secured claim in the amount of $450,000.00 for which Debtor is liable in satisfaction of the Full Claim (the "Agreed Claim").

    b. The Agreed Claim shall be payable as follows:

        i. Debtor shall pay SPE III $1,000.00/month by the last business day of the month following the month in which the Effective Date of the Plan occurs, and by the last business day of each month thereafter, for a total of sixty (60) months (the "Term").

        ii. During the Term, interest shall accrue on the principal owed on the Agreed Claim at the rate of 5%.

        iii. Debtor shall pay SPE III the balance owed on the Agreed Claim by the last business day of the month following the conclusion of the Term.

        iv. At any time during the Term, Debtor may prepay any additional amount due on the Agreed Claim without penalty.

3

c.     Notwithstanding anything in the Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to the Agreed Claim, except for enforcing the discharge provisions of the confirmed Plan.

d.     A failure by the reorganized Debtor to make a payment to SPE III pursuant to the terms of the Plan shall be an event of default. If the reorganized Debtor fails to cure an event of default as to Plan payments during the Term to SPE III within thirty (30) days after receipt of SPE III's written notice of default to be sent to Debtor and Debtor's Counsel via email, U.S. Mail, and filed on CM/ECF ("Uncured Default"), then SPE III, its successors and/or assigns may: (a) enforce the remaining balance of its Agreed Claim plus any accrued interest and attorney fees accrued in its enforcement of this agreement immediately and without further approval or release from the Bankruptcy Court against Debtor; (b) exercise any and all rights and remedies that SPE III, its successors and/or assigns, may have under applicable nonbankruptcy law, including but not limited to foreclosure, against Debtor and Borrowers; and/or (c) seek such further relief as may be appropriate in this Court. Debtor further agrees that in the event of an Uncured Default, the automatic stay shall be automatically lifted, and Debtor agrees not to directly or indirectly contest in any respect the Foreclosure Action and/or any efforts by SPE III, its successors and/or assigns, to exercise at their discretion any rights available at law and equity concerning the Loan and/or the Property.

98043\323499859.v1

e.    A failure by the reorganized Debtor to pay the balance owed on the Agreed Claim by the last business day of the month following the conclusion of the Term shall be an event of default. If the reorganized Debtor fails to cure this event of default as to the balanced owed on the Agreed Claim to SPE III within sixty (60) days after receipt of SPE III's written notice of default to be sent to Debtor and Debtor's Counsel via email, U.S. Mail, and filed on CM/ECF ("Uncured Maturity Default"), then SPE III, its successors and/or assigns may: (a) enforce the remaining balance of its Agreed Claim plus any accrued interest and attorney fees accrued in its enforcement of this agreement immediately and without further approval or release from the Bankruptcy Court against Debtor; (b) exercise any and all rights and remedies that SPE III, its successors and/or assigns, may have under applicable nonbankruptcy law, including but not limited to foreclosure, against Debtor and Borrowers; and/or (c) seek such further relief as may be appropriate in this Court. Debtor further agrees that in the event of an Uncured Maturity Default, the automatic stay shall be automatically lifted, and Debtor agrees not to directly or indirectly contest in any respect the Foreclosure Action and/or any efforts by SPE III, its successors and/or assigns, to exercise at their discretion any rights available at law and equity concerning the Loan and/or the Property.

f.    If Debtor requests a relaxation or amendment of the payment schedule from SPE III due to special circumstances, SPE III shall have the option in its sole discretion, but not the duty, to relax or amend the payments schedule

98043\323499859.v1

as SPE III, in its sole discretion, may see fit (which SPE III should not unreasonably withhold).

g. The failure of SPE III to insist on strict compliance by Debtor with any payment term of this Stipulation shall not constitute a waiver or relaxation of any future performance by Debtor of that term, nor shall such failure constitute a waiver or relaxation by SPE III of any other term of this Stipulation.

2. Upon the full execution of this Stipulation, the Adversary Proceeding, Debtor's complaint therein, and all claims that were asserted or could have been asserted by Debtor, are released and dismissed in their entirety, with prejudice, as against Mr. Naidus, WBL, SPE III, BLM, and any of their respective officers, directors, employees, agents, affiliates, and insurers and the pending motions to dismiss therein shall be administratively terminated.

3. If any provision of this Stipulation conflicts with any Order entered in this matter, including a confirmation order, the provisions of this Stipulation control.

4. This Stipulation shall take effect upon its execution by all parties, and shall be attached and become an exhibit to any confirmation order entered by the Bankruptcy Court.

*Signature Pages to Follow*

6

Date: 1/29/25

**GILLIAN JORDAN AKA GILLIAN MARGARET JORDAN-DE VERTEUIL**
*Debtor/Adversary Proceeding Plaintiff*

By:

Gillian Jordan Aka Gillian Margaret Jordan-De Verteuil

98043\323499859.v1

Date: 1/29/25

**THE LAW OFFICES OF NARISSA A. JOSEPH**
*Attorneys for Debtor/Adversary Proceeding Plaintiff,*
Gillian Jordan Aka Gillian Margaret Jordan-De Verteuil

By: _____
Narissa A. Joseph, Esq.
305 Broadway, Suite 1001
New York, New York 10007
Telephone: (212) 233-3060
Email: njosephlaw@aol.com

Date: __January 30, 2025__

**HINSHAW & CULBERTSON LLP**
*Attorneys for Creditor/Adversary Proceeding Defendant,*
WBL SPE III, LLC
*Attorneys for Adversary Proceeding Defendants,*
Doug Naidus and World Business Lenders, LLC

By: *Daniel A. Schleifstein*
Daniel A. Schleifstein, Esq.
800 Third Avenue, 13th Floor
New York, New York 10022
Telephone: (212) 471-6200
Email: dschleifstein@hinshawlaw.com

9

Date: **1/31/25**

RIMON, P.C.
*Attorneys for Adversary Proceeding Defendant,*
The Bank of Lake Mills

By: _____
Anthony C. Acampora, Esq.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: (516) 479-6300
Email: anthony.acampora@rimonlaw.com

10