**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11 (Subchapter V)** |
| **GILLIAN JORDON aka GILLIAN MARGARET JORDON-DE VERTEUIL,** | **Case No. 1-22-40568 (JMM)** |
| **Debtor.** | **Hon. Jil Mazer-Marino** |

# DEBTOR'S SIXTH AMENDED SUBCHAPTER V PLAN OF REORGANIZATION (SALE PLAN)

Gillian Jordon, also known as Gillian Margaret Jordon-De Verteuil (the "Debtor"), the individual debtor and debtor in possession herein and the plan proponent under 11 U.S.C. § 1189(a), respectfully proposes this Sixth Amended Subchapter V Plan of Reorganization (the "Plan"). This Plan supersedes and replaces all prior plans filed in this case, including the Fifth Amended Subchapter V Plan of Reorganization dated August 10, 2026 (ECF No.  206). It is submitted in the form contemplated by Official Form 425A and at the direction of the Court, in a simplified format, following the hearing held on August 12, 2026. This Plan was formulated in consultation with Gerard R. Luckman, Esq., the Subchapter V Trustee, consistent with his duty under 11 U.S.C. § 1183(b)(7), The treatment of every claim remains payment in full, in cash, of one hundred cents on the dollar. The Plan additionally conforms the mechanics of payment of the federal and state tax claims to 11 U.S.C. §§ 511 and 1129(a)(9)(C)–(D), as described in Sections 3.03, 4.01 (Classes 4 and 5), 7.07, 7.08 and 8.08; no creditor receives less on account of any such conformity.

This is a sale plan. The Plan is funded by the sale of the Debtor's residence at 455 Macon Street, Brooklyn, New York 11233 (the "Real Property"), which is the Debtor's only asset of meaningful value and substantially all of the property of the estate. The Real Property will be marketed by a licensed real estate broker under an executed exclusive right to sell listing agreement at an offering price of $2,000,000.00; the highest and best offer will be accepted; and title will close on or before January 31, 2027, failing which a court-supervised auction backstop applies. Every Allowed Claim is paid in full — one hundred cents on the dollar — and the surplus, together

with the Debtor's homestead exemption, is returned to the Debtor. Capitalized terms not otherwise defined have the meanings given in the Bankruptcy Code.

## BACKGROUND FOR CASES FILED UNDER SUBCHAPTER V

### A. Description and History of the Debtor's Business

The Debtor is an individual. Her principal business is the operation of a day-care center in New York City through the corporate entity ABC Ninos, Inc. ("ABC"), of which she is the Director and from which she earns a salary of approximately $10,000 per month; after ordinary and necessary living expenses, her projected disposable income is not more than approximately $2,000 per month. ABC employs approximately twelve people. The Debtor's sole asset of meaningful value is the Real Property, her home, which constitutes substantially all of the property of the estate within the meaning of 11 U.S.C. § 1123(b)(4). Her only other interests are her equity in ABC, a closely held service business with no realizable liquidation value apart from her own continued labor, and a 2018 Nissan Pathfinder of modest value, the financing on which she has retired in full during this case.

The Debtor commenced this case on March 23, 2022 (the "Petition Date") by filing a voluntary petition under Chapter 11, Subchapter V, to stay a scheduled foreclosure auction of the Real Property. The disputes with the foreclosing lender, WBL SPE III, LLC ("WBL"), and its affiliates, including the adversary proceeding commenced by the Debtor (Adv. Pro. No. 1-23-01064), have been fully and finally resolved by a Stipulation approved by Order entered November 12, 2025 (the "WBL Order"), under which WBL holds an allowed secured claim of $450,000.00 (the "Agreed Claim") in full satisfaction of its asserted claim of $2,262,801.39. The WBL Order directs that the Stipulation be incorporated into and made a part of any plan confirmed on behalf of the Debtor, and the Stipulation is accordingly annexed as Exhibit C and incorporated herein by reference.

The claims register has otherwise been materially reduced during the case: the claims of T-Mobile (Claim No. 5), LVNV Funding, LLC (Claim No. 11), and Bayside United Methodist Church (Claim No. 13) have been withdrawn; the claim of Nissan Motor Acceptance Corporation (Claim No. 10) has been disallowed and expunged (ECF No. 202); Claim No. 6 of the New York State Department of Taxation and Finance is duplicative of Claim No. 1 and will be expunged;

and the vehicle-secured claim of Bridgecrest Credit Company, LLC (Claim No. 4) has been paid in full and retired by the Debtor from her own income. The remaining general unsecured claims aggregate approximately $4,590.94.

The Debtor cannot fund from operations the lump-sum payments that a retain-and-pay plan would require: the secured and priority tax claims must be paid in full, with interest, no later than five years after the Petition Date — by March 23, 2027. See 11 U.S.C. § 1129(a)(9)(C)–(D). The Real Property, however, holds equity well in excess of all claims. The Plan therefore sells the Real Property under the confirmed Plan pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1123(b)(4), with title passing free and clear of liens by operation of 11 U.S.C. § 1141(c) and all valid liens attaching to the proceeds in their existing priority; no motion or other relief under section 363 of the Code is required or invoked. The transfer is exempt from stamp and transfer taxes under 11 U.S.C. § 1146(a) because it occurs under a confirmed plan.

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as they would receive in a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7), incorporated by § 1191(a). A hypothetical chapter 7 liquidation analysis is attached to the Plan as Exhibit A.

The Plan pays every Allowed Claim in full, in cash, and no creditor may receive more than payment in full; the Plan therefore necessarily provides each holder at least as much as a chapter 7 liquidation. As Exhibit A demonstrates, a chapter 7 trustee would liquidate the same Real Property, but by forced or expedited sale, without the repairs, orderly marketing, and timing provided by this Plan and without the § 1146(a) transfer-tax exemption, and the estate would bear a statutory trustee commission under 11 U.S.C. § 326 and the trustee's professional fees. The Debtor's interest in property of the estate (Class 8) likewise receives substantially more under the Plan than in a chapter 7 liquidation.

**C. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Plan Proponent has provided projected financial information as Exhibit B. Because this is a sale plan, the payments that satisfy all Allowed Claims are made from the proceeds of the sale of the Real Property, not from the Debtor's income; the Debtor's projected disposable income,

as defined by 11 U.S.C. § 1191(d), of not more than approximately $2,000 per month for the period described in § 1191(c)(2) is required only to fund her interim obligations — the first mortgage, the $1,000 monthly payment to WBL under the Stipulation, post-petition taxes, insurance, and maintenance — between the Effective Date and the closing. The value of the property to be distributed under the Plan (net sale proceeds paying every Allowed Claim in full, with interest) far exceeds the Debtor's projected disposable income over any three-to-five-year period.

The final Plan payment is expected to be paid at the closing of the sale, on or before January 31, 2027. The projections conservatively assume a gross sale price of not less than $1,900,000.00 against the $2,000,000.00 offering price fixed by the executed Listing Agreement; that assumption is consistent with the marketed value of the Real Property, and the auction backstop in Section 7.07 assures consummation in all events. You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## ARTICLE 1: SUMMARY

This Plan of Reorganization under Chapter 11, Subchapter V, of the Bankruptcy Code proposes to pay the creditors of Gillian Jordon (the Debtor) in full from the proceeds of the sale of the Real Property at 455 Macon Street, Brooklyn, New York 11233. The Real Property will be marketed by Rosalind Bolden, Licensed Real Estate Broker, of Bluewater Capital Realty Corp., under an executed exclusive right to sell listing agreement at an offering price of $2,000,000.00; the highest and best offer will be accepted; and title will close on or before January 31, 2027. If the sale is not consummated by that date, the Subchapter V Trustee, Gerard R. Luckman, Esq., in conjunction with counsel to the Debtor, shall conduct a court-supervised auction of the Real Property. Denrick Cooper, Esq. shall serve as closing attorney.

This Plan provides for one class of priority claims; five classes of secured claims; one class of non-priority unsecured claims; and one class comprising the interests of the individual Debtor in property of the estate. Non-priority unsecured creditors holding allowed claims will receive distributions valued at 100 cents on the dollar. This Plan also provides for the payment of administrative and priority claims in full. No proceeds of the sale shall be disbursed to any person or entity except pursuant to an order of the Bankruptcy Court, as provided in Section 7.09.

All creditors and equity interest holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claims. Because § 1125 of the Code does not apply in this case, 11 U.S.C. § 1181(b), no separate disclosure statement is required, and this Plan itself supplies the information required by 11 U.S.C. § 1190(1). Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 Class 1. All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims under § 507(a)(8)).

2.02 Class 2. The secured claim of Nationstar Mortgage LLC d/b/a Mr. Cooper (first mortgage on the Real Property), to the extent allowed as a secured claim under § 506 of the Code.

2.03 Class 3. The secured claim of WBL SPE III, LLC, as fixed by the Stipulation (the Agreed Claim).

2.04 Class 4. The secured claim of the New York State Department of Taxation and Finance (tax warrants).

2.05 Class 5. The secured claim of the Internal Revenue Service (federal tax lien).

2.06 Class 6. The secured claim of Bridgecrest Credit Company, LLC (2018 Nissan Pathfinder), paid in full and retired during the case.

2.07 Class 7. All non-priority unsecured claims allowed under § 502 of the Code.

2.08 Class 8. The interests of the individual Debtor in property of the estate.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

3.01 Unclassified claims. Under § 1123(a)(1), administrative expense claims and priority tax claims are not in classes.

3.02 Administrative expense claims. Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full, in cash, on the later of the Effective Date of

this Plan or the date on which such claim is allowed by a final order, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor, and in any event from the proceeds of the sale at closing. Administrative expense claims include (a) the fees and expenses of the Subchapter V Trustee; (b) the fees and expenses of the Debtor's retained professionals, Dahiya Law Offices LLC and The Law Offices of Narissa A. Joseph; and (c) the post-petition administrative tax claims of the Internal Revenue Service (Claim No. 15-3, $24,207.64) and the New York State Department of Taxation and Finance (Claim No. 14, $2,841.44), with any accrued statutory interest. No professional compensation shall be paid except upon application to, and allowance by, the Court under §§ 330 and 331 of the Code and Bankruptcy Rule 2016. Acceptance of this Plan by a holder of an administrative expense claim shall constitute that holder's agreement to payment at the closing; in the alternative, if this Plan is confirmed under § 1191(b), the Debtor requests confirmation on the deferred-payment basis permitted by § 1191(e).

3.03 Priority tax claims. Each holder of an allowed priority tax claim under § 507(a)(8) — the Internal Revenue Service (Claim No. 7-4) and the New York State Department of Taxation and Finance (Claim No. 1-3) — shall be paid the allowed amount of its claim in full, in cash, with interest at the rate determined under 11 U.S.C. § 511 and applicable nonbankruptcy law, fixed as of the calendar month in which this Plan is confirmed, as follows. (a) Regular installment payments. Commencing on the first day of the first full calendar month following the Effective Date, and continuing on the first day of each month thereafter through the closing, the Debtor shall pay regular monthly installments in cash in the aggregate amount of $500.00 per month, allocated pro rata, according to the allowed amounts of the respective claims, among the holders of all allowed secured and priority tax claims — that is, the priority tax claims treated in this Section and the secured tax claims classified in Classes 4 and 5 — so that the secured tax claims are treated in the same manner and over the same period as the priority tax claims, as 11 U.S.C. § 1129(a)(9)(D) requires. Each installment shall be applied first to accrued interest and then to principal. (b) Final payment. The entire unpaid balance of each such allowed claim, together with all interest accrued and unpaid through the date of payment, shall be paid in cash from the proceeds of the sale at the closing, and in all events not later than March 23, 2027, being five years after the Petition Date, in conformity with 11 U.S.C. § 1129(a)(9)(C). (c) Amount. Each such claim shall be paid in such amount as is allowed, together with all interest and penalties accruing thereon through the date of payment. The amounts asserted in the proofs of claim — $26,386.15 (Claim

No. 7-4) and $7,024.40 (Claim No. 1-3) — are estimates as of the dates of those claims and are not a limitation on the amount to be paid. (d) Agreed treatment. To the extent a holder of a priority tax claim has agreed in writing to a different treatment of its claim, including by stipulation approved by the Court, that treatment governs. 11 U.S.C. § 1129(a)(9)(C).

3.04 Statutory fees. All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. There are no quarterly United States Trustee fees in this Subchapter V case. 28 U.S.C. § 1930(a)(6)(A).

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01 Claims and interests shall be treated as follows under this Plan:

Class 1 — Priority claims excluding those in Article 3 (Unimpaired). No such claims are known to exist. Any allowed Class 1 claim will be paid in full, in cash, on the later of the Effective Date or the date on which such claim is allowed by a final non-appealable order.

Class 2 — Secured claim of Nationstar Mortgage LLC d/b/a Mr. Cooper (Unimpaired). The first mortgage (Claim No. 12, $352,264.12) is reinstated and remains unaltered pending the sale; the Debtor shall remain current on the regular monthly contractual payments through closing. At closing, the allowed secured claim shall be paid in full from the sale proceeds in the amount of the contractual payoff, with interest at the note rate, and the mortgage shall be satisfied of record. Until paid, the lien remains attached to the Real Property and the proceeds. There are no prepetition arrears requiring cure, so reinstatement under § 1124(2) leaves Nationstar's rights unaltered; to the extent Nationstar contends that this treatment renders Class 2 impaired, the Debtor does not dispute that Class 2 may be treated as impaired and entitled to vote. In either event the claim is paid in full, in cash, at closing.

Class 3 — Secured claim of WBL SPE III, LLC (Impaired). Class 3 is treated exclusively in accordance with the Stipulation (Exhibit C), as approved by the WBL Order and incorporated herein. WBL holds the allowed Agreed Claim of $450,000.00, bearing interest at 5% per annum. Pending the sale, the Debtor shall pay WBL $1,000.00 per month as the Stipulation provides. At closing, the Debtor shall pay WBL the entire unpaid balance of the Agreed Claim, with accrued interest, in full and final satisfaction of WBL's claim and lien — a prepayment expressly permitted by paragraph 1(b)(iv) of the Stipulation — whereupon WBL's lien shall be released. To the extent

any provision of this Plan or any confirmation order conflicts with the Stipulation, the Stipulation controls. The modification of this claim, secured by the Debtor's principal residence, is authorized by 11 U.S.C. § 1190(3), because the new value received in connection with the granting of the security interest was not used primarily to acquire the Real Property and was used primarily in connection with the Debtor's small business. See *In re Ventura*, 615 B.R. 1 (Bankr. E.D.N.Y. 2020).

Class 4 — Secured claim of the New York State Department of Taxation and Finance (Impaired). The allowed secured claim of $57,274.19 (tax warrants, Claim No. 1-3) shall be paid in full, in cash, from the sale proceeds at closing, with interest at the rate determined under 11 U.S.C. § 511 and applicable nonbankruptcy law, fixed as of the calendar month in which this Plan is confirmed. Pending the closing, this claim shall share in the regular monthly installments provided by Section 3.03(a), and the entire unpaid balance shall be paid at the closing as provided in Section 3.03(b), in such amount as is allowed together with all interest accruing through the date of payment, and in all events no later than March 23, 2027, being five years after the Petition Date, in conformity with 11 U.S.C. § 1129(a)(9)(D). Pending closing, the lien attaches to the Real Property and the proceeds.

Class 5 — Secured claim of the Internal Revenue Service (Impaired). The allowed secured claim of $36,546.92 (federal tax lien, Claim No. 7-4) shall be paid in full, in cash, from the sale proceeds at closing, with interest at the rate determined under 11 U.S.C. § 511 and 26 U.S.C. § 6621, fixed as of the calendar month in which this Plan is confirmed. Pending the closing, this claim shall share in the regular monthly installments provided by Section 3.03(a), and the entire unpaid balance shall be paid at the closing as provided in Section 3.03(b), in such amount as is allowed together with all interest accruing through the date of payment, and in all events no later than March 23, 2027, being five years after the Petition Date, in conformity with 11 U.S.C. § 1129(a)(9)(D). Pending closing, the lien attaches to the Real Property and the proceeds.

Class 6 — Secured claim of Bridgecrest Credit Company, LLC (Unimpaired — paid in full and retired). The Debtor paid this vehicle-secured claim (Claim No. 4, $20,268.14) in full during the case from her own income, without recourse to the estate or the sale proceeds. No distribution will be made on account of this claim, and the Debtor retains the vehicle free of Bridgecrest's lien. Class 6 is conclusively presumed to have accepted the Plan under § 1126(f) and

is not entitled to vote. Bridgecrest shall, within thirty days after the Effective Date or upon the Debtor's written request, deliver any lien release or notice of satisfaction necessary to clear its lien from the certificate of title.

Class 7 — Non-priority unsecured creditors (Impaired). All allowed general unsecured claims shall be paid in full (100 cents on the dollar), in cash, from the sale proceeds at or promptly after closing, pursuant to order of the Court. Class 7 consists of the claims of Directv, LLC ($679.44, Claim No. 2), Capital One N.A. ($3,461.35, Claim No. 3-2), and Merrick Bank ($450.15, Claim No. 9), aggregating approximately $4,590.94.

Class 8 — The interests of the individual Debtor in property of the estate (Impaired). After payment in full of all allowed administrative, secured, priority, and general unsecured claims and the costs of administration and sale, the remaining net proceeds of the sale shall revest in and be distributed to the Debtor, subject to and together with her homestead exemption under N.Y. C.P.L.R. § 5206 and any other applicable exemptions. The Debtor shall retain and continue to operate ABC Ninos, Inc. The absolute priority rule of § 1129(b)(2)(B)(ii) does not apply in this Subchapter V case, 11 U.S.C. § 1181(a), and in all events every Allowed Claim is paid in full.

## ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 Delay of distribution on a disputed claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Pending allowance, the disputed amount shall be reserved in the escrow maintained under Section 7.09.

5.03 Settlement of disputed claims. The Debtor will have the power and authority to settle and compromise a disputed claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.04 Claims resolved by withdrawal or order. The following claims have been resolved and shall receive no distribution under this Plan: (a) Claim No. 5 of T-Mobile ($87.26), withdrawn

(ECF No. 194; ECF No. 203); (b) Claim No. 10 of Nissan Motor Acceptance Corporation ($10,273.25), disallowed and expunged (ECF No. 202); (c) Claim No. 11 of LVNV Funding, LLC ($155.19), withdrawn (ECF No. 201); and (d) Claim No. 13 of Bayside United Methodist Church ($88,125.00), withdrawn (ECF No. 137).

5.05 Duplicate claim. Claim No. 6 of the New York State Department of Taxation and Finance ($60,006.59) is duplicative of, and superseded by, Claim No. 1 (as amended, $64,298.59) and shall be disallowed and expunged as duplicative.

5.06 Superseded claim. Claim No. 8 of WBL SPE III, LLC ($2,262,801.39) has been replaced by the Stipulation pursuant to the WBL Order, and WBL's claim is allowed solely in the amount and on the terms of the Agreed Claim.

## ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed executory contracts and unexpired leases. The Debtor has no executory contracts or unexpired leases to assume. Except for any contract or lease assumed by prior order or the subject of a pending motion to assume, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN

7.01 Sale of the Real Property under the confirmed Plan. The Plan is implemented through the sale of the Real Property, free and clear of liens, claims, interests, and encumbrances, pursuant to 11 U.S.C. §§ 1123(a)(5)(D) and 1123(b)(4) and by operation of 11 U.S.C. § 1141(c) upon confirmation, with all valid liens attaching to the net proceeds of sale in their existing priority. The sale is effectuated exclusively under, and derives its authority entirely from, the confirmed Plan and the confirmation order; it is not a sale under section 363 of the Code, and no motion, procedures, findings, or other relief under section 363 are required or invoked.

7.02 Retention of Broker; the Listing Agreement. The Debtor has retained Rosalind Bolden, Licensed Real Estate Broker, of Bluewater Capital Realty Corp. (NY DOS Unique ID No.

10311205107), 132 W. Merrick Road, Suite 689, Freeport, New York 11520, as the estate's broker under an executed exclusive right to sell listing agreement on the Brooklyn New York Multiple Listing Service form (the "Listing Agreement," Exhibit D), offering the Real Property at $2,000,000.00 with a commission of four percent (4%), running through December 31, 2026 subject to extension by its terms. An application to retain the Broker under 11 U.S.C. § 327(a) and Bankruptcy Rule 2014 shall be filed forthwith, without awaiting confirmation; to the extent necessary, the order confirming this Plan shall also constitute approval of the retention and of the Listing Agreement, effective as of its execution. To the extent the Listing Agreement conflicts with this Plan or the confirmation order — including as to the offering price, which the confirmation order may fix or adjust, including at $1,900,000.00 — the Plan and the confirmation order govern, and the Listing Agreement is deemed modified accordingly. The Broker's commission shall not be paid at closing; an amount equal to the commission shall be reserved from the gross proceeds and held in the escrow maintained under Section 7.09, and the Broker shall be compensated only upon application to, allowance by, and order of the Court.

7.03 Closing attorney. Denrick Cooper, Esq. shall serve as closing attorney, retained for that limited purpose upon application under 11 U.S.C. § 327 and Bankruptcy Rule 2014, with compensation payable from the sale proceeds at closing in such amount as the Court may approve.

7.04 Repairs. To maximize the sale price, the Debtor shall complete reasonable repairs and upgrades to the Real Property, funded from her own funds and not from estate assets, substantially completed within sixty (60) days after the Effective Date.

7.05 Marketing. The Broker shall extensively and actively market the Real Property at the offering price, including listing on the multiple listing service and major public real estate platforms, advertising, broker outreach, open houses, and showings. The Debtor shall accept the highest and best offer, and, in consultation with the Broker and the Subchapter V Trustee, may adjust the asking price as market conditions warrant, subject to the milestones and Court approval herein.

7.06 Sale milestones. The Debtor shall (a) file the Broker retention application forthwith and before the confirmation hearing; (b) substantially complete repairs within sixty (60) days after the Effective Date; (c) list and actively market the Real Property in all events on or before October 31, 2026; (d) execute a contract of sale for the highest and best offer on or before December 15,

2026; and (e) close title on or before January 31, 2027 (the "Outside Closing Date"). The Debtor shall report in writing to the Subchapter V Trustee not less frequently than every thirty (30) days on marketing status, offers received, and progress toward each milestone.

7.07 Auction backstop. If a contract of sale has not been fully executed by December 15, 2026, or if the sale has not closed by the Outside Closing Date, the Subchapter V Trustee, in conjunction with counsel to the Debtor, shall schedule and conduct a court-supervised public auction of the Real Property pursuant to this Plan, free and clear of liens by operation of the confirmed Plan and § 1141(c), with all valid liens attaching to the proceeds in their existing priority. The auction shall be conducted in accordance with the auction and bidding procedures annexed hereto as Exhibit E, which shall be approved by the order confirming this Plan and shall take effect, without further order, upon the filing by the Subchapter V Trustee or the Debtor of a notice that a milestone has not been met. The order confirming this Plan shall also approve the retention of the auctioneer named therein under 11 U.S.C. § 327 and Bankruptcy Rule 2014, effective upon the filing of such notice, so that no further retention application is required. The Debtor consents to entry of an order scheduling and approving such auction upon the filing of such notice, and waives any further notice or hearing as a precondition beyond that required by the Court. The auction and closing shall in all events be completed so as to permit payment in full of the secured and priority tax claims of the Internal Revenue Service and the New York State Department of Taxation and Finance no later than March 23, 2027.

7.08 Distribution of sale proceeds (waterfall). The proceeds of the sale shall be distributed at or promptly after closing, pursuant to order of the Court, in the following order: (1) ordinary and customary costs of sale (title, recording, closing attorney, reasonable adjustments; no stamp or transfer tax by reason of § 1146(a); the Broker's commission reserved, not disbursed, per Section 7.02); (2) Class 2 (Nationstar/Mr. Cooper), in full; (3) Class 3 (the WBL Agreed Claim, principal plus accrued 5% interest), in full; (4) Classes 4 and 5 (secured tax claims), in full with statutory interest, in their respective lien priorities; (5) allowed administrative expense claims, including the fees and expenses of the Subchapter V Trustee and the Debtor's professionals as allowed under § 330, and the administrative tax claims; (6) priority tax claims under § 507(a)(8), in full with interest; (7) Class 7 general unsecured claims, in full; and (8) the surplus to the Debtor, together with and subject to her homestead and other exemptions. Notwithstanding the order set forth

above, distributions to holders of secured claims shall in all events be made in accordance with the actual relative priority of their respective liens as determined by applicable nonbankruptcy law and, if disputed, by order of this Court. The Debtor states that the Notices of Federal Tax Lien were recorded in Kings County on August 1, 2019 and January 7, 2020, and that the New York State tax warrants were docketed in Kings County on March 4 and March 6, 2021. Any dispute as to relative lien priority shall be resolved before distribution, and any disputed amount shall be held in escrow pending allowance by final order.

7.09 No disbursement without order of the Bankruptcy Court. Notwithstanding anything in this Plan to the contrary, no disbursement of any portion of the sale proceeds shall be made to any person or entity — including the Debtor, the Broker, the closing attorney, any professional, any secured creditor, any taxing authority, or any other creditor — except pursuant to an order of the Bankruptcy Court. Not less than fourteen (14) days before the scheduled closing, the Debtor shall file a motion, on notice to the Subchapter V Trustee, the United States Trustee, the taxing authorities, all lienholders, and all parties in interest, seeking an order approving the closing, fixing the payoff and distribution amounts, and authorizing the specific disbursements. All net proceeds shall be held in the escrow account of the Debtor's counsel or as the Court may direct, pending entry of such order.

7.10 Exemption from transfer and stamp taxes. The making and delivery of the deed and other instruments of transfer under this Plan (including upon any auction sale) are exempt from all stamp, transfer, recording, and similar taxes pursuant to 11 U.S.C. § 1146(a), including the New York State real estate transfer tax and the New York City real property transfer tax. The order confirming this Plan shall so provide and shall direct the appropriate governmental officers to record all instruments of transfer without payment of any such tax.

7.11 Interim obligations pending sale. Pending closing, the Debtor shall (i) remain current on the Class 2 mortgage; (ii) pay WBL $1,000.00 per month as the Stipulation provides; (iii) timely pay all post-petition taxes and timely file all required returns, the Debtor having filed all federal and state tax returns required to be filed for all periods through the tax year 2025; (iv) maintain casualty and liability insurance on the Real Property; and (v) preserve and maintain the Real Property in good condition.

7.12 Submission of future earnings — 11 U.S.C. § 1190(2). The Debtor shall submit all or such portion of her future earnings and other future income as is necessary for the execution of this Plan — specifically, pending closing, so much of her earnings from ABC as is required to fund the interim obligations in Section 7.11 and any reserve the Court may direct. Because all Allowed Claims are paid in full from the sale proceeds, no further submission of income is necessary.

7.13 Disbursing agent — 11 U.S.C. § 1194. Subject in all respects to Section 7.09, distributions shall be made from the escrowed sale proceeds by the closing attorney or the Debtor's counsel as the Court may direct, and only pursuant to Court order. If this Plan is confirmed under § 1191(b), the Debtor requests that the confirmation order provide for distributions in the manner set forth in Sections 7.08 and 7.09, with the Subchapter V Trustee to receive notice of, and an opportunity to be heard on, each proposed distribution; nothing herein limits the Court's authority to direct that the Subchapter V Trustee serve as disbursing agent, and the Debtor consents to such a direction.

## ARTICLE 8: GENERAL PROVISIONS

8.01 Definitions and rules of construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02 Effective date. The Effective Date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. The Debtor shall file a notice of substantial consummation not later than fourteen (14) days after substantial consummation, as required by 11 U.S.C. § 1183(c)(2).

8.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04 Binding effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

8.05 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06 Controlling effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan; provided that the Stipulation controls over any conflicting provision of this Plan or of any confirmation order as to WBL's Agreed Claim.

8.07 Default and creditors' remedies. In the event of a material default under this Plan that remains uncured for thirty (30) days after written notice to the Debtor and the Debtor's counsel: (a) the affected creditor may enforce the Plan in this Court or any other court of competent jurisdiction; (b) the Internal Revenue Service and the New York State Department of Taxation and Finance may collect the unpaid balance of their allowed claims, with statutory interest, through their administrative collection procedures and any other lawful means, as if this case had not been commenced, without further order of this Court; and (c) WBL's remedies upon default are governed exclusively by the Stipulation. The failure to execute a contract of sale by December 15, 2026, or to close by the Outside Closing Date, triggers the auction backstop in Section 7.07.

8.08 Post-confirmation interest on tax claims. Post-confirmation interest shall accrue on, and be paid with respect to, each allowed secured and priority tax claim at the rate determined under 11 U.S.C. § 511 and applicable nonbankruptcy law, fixed as of the calendar month in which this Plan is confirmed, in satisfaction of §§ 1129(a)(9)(C) and (D). The interest rates recited in any proof of claim are the rates in effect as of the date of that claim and are not binding for this purpose.

8.09 Retention of jurisdiction. The Bankruptcy Court shall retain jurisdiction over all matters arising under, arising in, or related to this case and the Plan, including to determine claim objections; approve and resolve disputes concerning the sale or auction and the distribution of proceeds, and enter the disbursement orders contemplated by Section 7.09; determine applications for compensation under §§ 330 and 331; consider modification under § 1193; enforce and interpret the Plan and confirmation order, including the § 1146(a) exemption; and enter a final decree. Notwithstanding the foregoing, and consistent with the Stipulation, the Court shall not retain jurisdiction with respect to the WBL Agreed Claim, except to enforce the discharge provisions of the confirmed Plan.

8.10 Status reports and final decree. The Debtor shall file a status report not less than every ninety (90) days after entry of the confirmation order, served on the Subchapter V Trustee and the United States Trustee, and shall file an application and proposed order for a final decree under Bankruptcy Rule 3022 within fourteen (14) days after full administration and no later than eighteen (18) months after entry of the confirmation order.

8.11 Property of the estate; service of the Subchapter V Trustee; vesting. If this Plan is confirmed under § 1191(a), the service of the Subchapter V Trustee terminates upon substantial consummation. 11 U.S.C. § 1183(c)(1). If this Plan is confirmed under § 1191(b), the Debtor's post-petition earnings and assets become property of the estate under § 1186(a), the Debtor remains in possession under § 1186(b), and the Subchapter V Trustee continues to serve as provided in §§ 1183 and 1194. Upon the closing and the making of the distributions provided herein, all property of the estate not required for those distributions shall vest in the Debtor free and clear of all claims and interests pursuant to §§ 1141(b) and (c), subject to and together with her homestead and other applicable exemptions.

8.12 Request for confirmation. The Debtor requests confirmation under 11 U.S.C. § 1191(a). If any impaired class does not accept the Plan, the Debtor requests, in the alternative, confirmation under § 1191(b): the Plan does not discriminate unfairly and is fair and equitable within the meaning of § 1191(c), because the sale under the confirmed Plan satisfies § 1129(b)(2)(A) as incorporated by § 1191(c)(1), the value of the property to be distributed exceeds the Debtor's projected disposable income for purposes of § 1191(c)(2), and Exhibits A and B and the auction backstop and escrow provisions of Sections 7.07 through 7.09 establish a reasonable likelihood of performance and the remedies protecting holders of claims under § 1191(c)(3), with administrative expense claims in that event treated as permitted by § 1191(e).

8.13 Compliance with the requirements for confirmation. The Debtor submits that each applicable requirement of 11 U.S.C. § 1129(a), as incorporated by 11 U.S.C. § 1191(a) and (b), is satisfied:

(a) § 1129(a)(1). The Plan complies with the applicable provisions of the Code, including §§ 1122 and 1123. Each class contains only claims that are substantially similar. The four secured claims are separately classified in Classes 2 through 6 because each is secured by a different lien on different collateral or holds a different priority in the same collateral,

and each accordingly has materially different legal rights. Administrative expense claims and priority tax claims are not classified, as § 1123(a)(1) requires. Section 7.01 and Article 7 supply adequate means for implementation under § 1123(a)(5), including the sale of substantially all property of the estate and the distribution of the proceeds under § 1123(b)(4). Section 1123(a)(6) is inapplicable, the Debtor being an individual and not a corporation. No class is discriminated against, and no similarly situated claim receives different treatment.

(b) § 1129(a)(2). The Debtor has complied with the applicable provisions of the Code. Section 1125 does not apply in this case, 11 U.S.C. § 1181(b); this Plan itself supplies the information required by 11 U.S.C. § 1190(1), consisting of a brief history of the Debtor's business operations, the liquidation analysis annexed as Exhibit A, and the projections annexed as Exhibit B. The Debtor has filed her monthly operating reports and has satisfied her tax-return filing obligations as set forth in Section 7.11.

(c) § 1129(a)(3). The Plan has been proposed in good faith and not by any means forbidden by law. It devotes the Debtor's only asset of meaningful value entirely to the payment of creditors, pays every Allowed Claim in full, and was formulated in consultation with the Subchapter V Trustee pursuant to his duty under 11 U.S.C. § 1183(b)(7).

(d) § 1129(a)(4). No payment made or to be made by the Debtor for services or for costs and expenses in or in connection with this case, or in connection with the Plan and incident to this case, has been or will be made except upon approval by, and subject to the allowance of, this Court under 11 U.S.C. §§ 330 and 331 and Bankruptcy Rule 2016. See Sections 3.02, 7.02, 7.03 and 7.09.

(e) § 1129(a)(5). The Debtor is an individual. She will continue to manage her own affairs and to maintain the Real Property pending the sale, and thereafter no person will serve as a director, officer or voting trustee of the Debtor. The Debtor's continued management is consistent with the interests of creditors and equity security holders and with public policy: she is a debtor in possession under 11 U.S.C. §§ 1184 and 1186(b), she receives no compensation from the estate, her salary is paid by ABC Ninos, Inc., and no proceeds may be disbursed except upon order of this Court under Section 7.09. No insider will be employed or retained by the Debtor on account of the Plan, and no payment is made to any

insider under the Plan other than the distribution to the Debtor of the surplus in her capacity as the holder of the Class 8 interest, after payment in full of every Allowed Claim.

(f) § 1129(a)(6). The Plan provides for no rate change subject to the jurisdiction of any governmental regulatory commission, and § 1129(a)(6) is therefore inapplicable.

(g) § 1129(a)(7). Each holder of a claim or interest in an impaired class will receive under the Plan not less than the amount it would receive if the Debtor were liquidated under chapter 7 on the Effective Date. Every Allowed Claim is paid in full, in cash, and no holder may receive more than payment in full. See Exhibit A.

(h) § 1129(a)(8). Classes 1, 2 and 6 are unimpaired and are conclusively presumed to have accepted the Plan under 11 U.S.C. § 1126(f). Classes 3, 4, 5, 7 and 8 are impaired and are entitled to vote. Classes 4 and 5 are impaired notwithstanding payment in full because the Plan defers payment beyond the Effective Date, displaces the liens from the Real Property to the proceeds under 11 U.S.C. § 1141(c), suspends collection remedies pending the closing, and fixes interest at the rate determined under 11 U.S.C. § 511 — former § 1124(3), which treated payment in full in cash as leaving a class unimpaired, having been repealed by Pub. L. No. 103-394, § 213(d) (1994). If any impaired class does not accept the Plan, the Debtor requests confirmation under 11 U.S.C. § 1191(b), as to which § 1129(a)(8) does not apply.

(i) § 1129(a)(9). Administrative expense claims are treated in Section 3.02 and are paid in full in cash, on the terms there stated and as permitted by 11 U.S.C. § 1191(e). Priority tax claims under § 507(a)(8) are treated in Section 3.03 and receive regular installment payments in cash, with the balance paid at the closing and in all events not later than March 23, 2027, being five years after the order for relief. The secured tax claims in Classes 4 and 5 are treated in the same manner and over the same period, as 11 U.S.C. § 1129(a)(9)(D) requires. No claim of a kind specified in § 507(a)(1) through (a)(7) other than those so treated is known to exist.

(j) § 1129(a)(10). If the Plan is confirmed under 11 U.S.C. § 1191(b), § 1129(a)(10) does not apply.

(k) § 1129(a)(11). Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor, except to the extent that such liquidation is proposed in the Plan itself. The Real Property is worth materially more than the aggregate of all claims against the estate; the Debtor is and has remained current on the Class 2 mortgage and on the interim payments required by the Stipulation; her income from ABC Ninos, Inc. is sufficient to fund her obligations under Section 7.11 pending the closing, as Exhibit B demonstrates; the Broker has been retained under an executed exclusive listing agreement; and, if the private sale is not consummated within the milestones of Section 7.06, the auction backstop of Section 7.07 and the procedures annexed as Exhibit E — both approved by the order confirming the Plan — assure consummation and payment in full within the period required by § 1129(a)(9).

(l) § 1129(a)(12). All fees payable under 28 U.S.C. § 1930 have been paid or will be paid on the Effective Date. There are no quarterly United States Trustee fees in this Subchapter V case. 28 U.S.C. § 1930(a)(6)(A). See Section 3.04.

(m) § 1129(a)(13). The Debtor is an individual and has never been obligated to pay retiree benefits within the meaning of 11 U.S.C. § 1114. Section 1129(a)(13) is therefore inapplicable.

(n) § 1129(a)(14). The Debtor is not required by any judicial or administrative order, or by statute, to pay any domestic support obligation as defined in 11 U.S.C. § 101(14A), and no such obligation is owed to her. There is accordingly no amount that first became payable after the Petition Date, and the requirement of § 1129(a)(14) is satisfied.

(o) § 1129(a)(15). Section 1129(a)(15) does not apply in a case under this subchapter. 11 U.S.C. §§ 1181(a), 1191(a) and (b).

(p) § 1129(a)(16). All transfers of property under the Plan are made by an individual debtor and not by a corporation or trust that is not a moneyed, business or commercial corporation or trust. Section 1129(a)(16) is therefore inapplicable.

(q) § 1129(b) and (c). Sections 1129(b) and 1129(c) do not apply in a case under this subchapter. 11 U.S.C. § 1181(a). The absolute priority rule of § 1129(b)(2)(B)(ii)

accordingly has no application, and in all events every Allowed Claim is paid in full before any distribution is made on account of the Class 8 interest.

8.14 Preservation of claims and causes of action. Except for the claims and causes of action released by the Stipulation and the WBL Order, which are released as therein provided, the Debtor retains and preserves, and upon confirmation the Debtor as reorganized shall retain and may enforce, all claims and causes of action of the Debtor and of the estate, including any claim under 11 U.S.C. §§ 542 through 550, in accordance with 11 U.S.C. § 1123(b)(3)(B). The Debtor is presently aware of no such claim or cause of action remaining to be pursued, and no recovery on any such claim is necessary to fund the Plan or is assumed in Exhibit A or Exhibit B.

8.15 Voting. Holders of claims in Classes 3, 4, 5 and 7 and the holder of the Class 8 interest are impaired and are entitled to vote to accept or reject the Plan. Classes 1, 2 and 6 are unimpaired, are conclusively presumed to have accepted the Plan under 11 U.S.C. § 1126(f), and are not entitled to vote. Ballots shall be in such form, and shall be returned by such date, as the Court may direct. Section 1125 of the Code does not apply in this case, 11 U.S.C. § 1181(b), and no separate disclosure statement is required or will be solicited.

## ARTICLE 9: DISCHARGE

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code — which, this being a sale plan, occurs upon consummation of the sale and the distributions provided herein. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

Because all Allowed Claims are paid in full under this Plan, no creditor's recovery is diminished by the discharge.

Respectfully submitted,

Dated: New York, New York
August 21, 2026

*/s/gillianjordon*
GILLIAN JORDON aka GILLIAN
MARGARET JORDON-DE VERTEUIL,

/s/ Karamvir Dahiya
Karamvir Dahiya, Esq.
DAHIYA LAW OFFICES LLC
Counsel to the Debtor
111 John Street, Suite 1860
New York, New York 10038
(212) 766-8000 | karam@dahiya.law

# EXHIBIT A

*Hypothetical Chapter 7 Liquidation Analysis*

In re Gillian Jordon, Case No. 1-22-40568 (JMM)

## EXHIBIT A — HYPOTHETICAL CHAPTER 7 LIQUIDATION ANALYSIS

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7), incorporated by § 1191(a). The Real Property is the estate's only asset of meaningful value, so the comparison is direct: a chapter 7 trustee would liquidate the same house and would have nothing else to administer. All figures are estimates, subject to final claim allowance, payoff statements, statutory interest, Court-approved fees and commissions, and actual sale results and closing costs.

| | **Sale Under the Plan** | **Hypothetical Chapter 7 Liquidation** |
|---|---|---|
| Gross sale price | $1,900,000.00 (conservative projection; $2,000,000.00 offering price; Debtor-funded repairs and orderly broker marketing) | $1,710,000.00 (estimated forced or expedited sale, without repairs or orderly marketing, at an assumed 10% discount) |
| Broker / auctioneer commission | ($76,000.00) (4% under the Listing Agreement; reserved and subject to Court allowance) | ($102,600.00) (estimated 6%) |
| New York State real estate transfer tax | $0.00 — exempt under 11 U.S.C. § 1146(a) | ($6,840.00) (0.4%) |
| New York City real property transfer tax | $0.00 — exempt under 11 U.S.C. § 1146(a) | ($24,367.50) (1.425%) |
| Title, recording, closing attorney, adjustments | ($39,000.00) | ($39,000.00) |
| Chapter 7 trustee commission (11 U.S.C. § 326) | None | (est. $60,000.00) |
| Chapter 7 trustee’s professional fees | None | (est. $50,000.00) |
| Net proceeds available for distribution | $1,785,000.00 | approx. $1,427,192.50 |
| Total identified claims — secured (Classes 2–5), administrative tax, priority tax, and general unsecured (Class 7) claims, each paid in full (exclusive of professional compensation to be fixed under § 330) | ($966,135.80) | ($966,135.80) |

| | Sale Under the Plan | Hypothetical Chapter 7 Liquidation |
|---|---|---|
| Recovery to holders of Allowed Claims | 100 cents on the dollar, in cash, at closing | 100 cents on the dollar, but delayed and subject to forced-sale, cost, and market risk |
| Estimated residue for allowed professional compensation and, thereafter, surplus to the Debtor (Class 8, with her homestead and other exemptions) | $818,864.20 | approx. $461,056.70 |
| Estimated advantage of the Plan to the estate and to the Class 8 interest | approx. $357,800.00 greater than chapter 7 | — |

Conclusion. Under the Plan, every Allowed Claim is paid in full, in cash, at closing; no creditor may receive more than payment in full, so each holder necessarily receives at least as much under the Plan as in a chapter 7 liquidation. A chapter 7 trustee, by contrast, would conduct a forced or expedited sale, without the Debtor-funded repairs, orderly broker marketing, and timing provided by the Plan, likely realizing a materially lower gross price; the estate would lose the § 1146(a) transfer-tax exemption (a sale under a confirmed plan) and would bear a statutory trustee commission under 11 U.S.C. § 326 and the chapter 7 trustee's professional fees. The holder of the Class 8 interest — the Debtor — would receive a surplus several hundred thousand dollars smaller in chapter 7. The Plan therefore satisfies the best-interests-of-creditors test as to every class and interest.

# EXHIBIT B

*Projected Financial Information — 11 U.S.C. § 1190(1)(C)*

In re Gillian Jordon, Case No. 1-22-40568 (JMM)

## EXHIBIT B — PROJECTED FINANCIAL INFORMATION (11 U.S.C. § 1190(1)(C))

Because this is a sale plan, the payments that satisfy all Allowed Claims are made from the proceeds of the sale of the Real Property and are projected in Exhibit A; the Debtor's income is required only to fund her interim obligations between the Effective Date and the closing. The figures below conform to the Debtor's amended Schedules I and J filed August 4, 2026 (ECF No. 205) and her monthly operating reports on file, and are subject to ordinary variation.

| | |
|---|---|
| **A. Monthly Income and Disposable Income (Pending Closing)** | |
| Gross monthly salary as Director of ABC Ninos, Inc. | $10,000.00 |
| Less: ordinary and necessary monthly living expenses, including the Class 2 first mortgage payment, taxes, insurance and utilities (per amended Schedules I and J, ECF No. 205) | (approx. $8,000.00) |
| Projected monthly disposable income (11 U.S.C. § 1191(d)) | not more than approx. $2,000.00 |
| **B. Monthly Obligations Funded from Income (Effective Date Through Closing)** | |
| Class 2 — Nationstar / Mr. Cooper, regular contractual monthly payment | Included in living expenses above |
| Class 3 — WBL SPE III, LLC, interim payment required by the Stipulation | $1,000.00 per month |
| Post-petition federal and state taxes, casualty and liability insurance, and maintenance of the Real Property | Balance of disposable income |
| Repairs and upgrades under Section 7.04 | Funded from the Debtor's own funds; not an estate obligation |
| Reserve for professional compensation, if directed by the Court | As the Court may direct |
| **C. Payments at Closing (Funded Entirely from Sale Proceeds — see Exhibit A)** | |
| Projected net proceeds available for distribution | $1,785,000.00 |
| Total identified uses (exclusive of professional compensation to be fixed under § 330) | $966,135.80 |
| Projected coverage ratio of net proceeds to identified claims | approx. 1.85 : 1 |

Projected timetable. Assuming an Effective Date in or about September 2026, the Debtor projects approximately four to five months of interim obligations before the closing on or before January 31, 2027 — approximately $4,000.00 to $5,000.00 in interim payments to WBL, together

with continued maintenance of the Class 2 mortgage and post-petition tax and insurance obligations — all within the Debtor's projected disposable income. The final Plan payment is expected to be paid at the closing, on or before January 31, 2027. These projections assume a conservative gross sale price of $1,900,000.00 against the $2,000,000.00 offering price of the executed Listing Agreement; the assumption is below, not above, the listed value, and the auction backstop of Section 7.07 protects holders of claims if the private sale is not consummated.

# EXHIBIT C

*Stipulation and Order Entered November 12, 2025*

In re Gillian Jordon, Case No. 1-22-40568 (JMM)

## EXHIBIT C — STIPULATION AND WBL ORDER

Annexed hereto as Exhibit C are a conformed copy of the fully executed Stipulation among the Debtor, Doug Naidus, World Business Lenders, LLC, WBL SPE III, LLC, and The Bank of Lake Mills, and the Order entered November 12, 2025 approving it. The Stipulation is appended to, incorporated into, and made a part of this Plan, in satisfaction of paragraph 1 of the Stipulation and of the WBL Order, which directs that the Stipulation be incorporated into and made a part of any plan confirmed on behalf of the Debtor. To the extent of any conflict between this Plan (or any confirmation order) and the Stipulation, the Stipulation controls as to WBL's Agreed Claim.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Gillian Jordon, aka Gillian Margaret Jordon-de Verteuil,<br><br>Debtor. | Chapter 11 [Subchapter V]<br>Case No. 1-22-40568-nhl<br><br>Hon. Nancy Hershey Lord |
| Gillian Jordan aka Gillian Margaret Jordan-De Verteuil,<br><br>Plaintiff,<br><br>v.<br><br>Doug Naidus; World Business Lenders, LLC, Worldwide Land Transfer, Inc., WBL SPE III, LLC, The Bank of Lake Mills, and John Does 1-3,<br><br>Defendants. | Adv. Pro . No.: 1-23-01064-nhl |

**ORDER APPROVING STIPULATION RESOLVING ADVERSARY PROCEEDING <u>AND AMENDING CLAIM NO. 8</u>**

The attorneys for Defendants Doug Naidus, World Business Lenders, LLC, and WBL SPE III, LLC in the above-referenced case, Hinshaw & Culbertson, LLP, having moved this Court for an Order Approving the Stipulation Resolving Adversary Proceeding and Amending Claim No. 8, as set forth in the Notice of Presentment of Application of Order Approving Stipulation Resolving Adversary Proceeding and Amending Claim No. 8 in accordance with the Stipulation, and upon reading and filing said Application, dated May 23, 2025, and there having been no appearance in opposition thereto, and due deliberation having been had thereon,

**NOW**, pursuant to 11 U.S.C. §105 and F.R.B.P. 9019, it is hereby

**ORDERED,** that the Stipulation annexed hereto as **Exhibit A** is hereby approved; and it is further

**ORDERED**, that the Stipulation annexed hereto as **Exhibit A** shall be incorporated into and made a part of any plan confirmed on behalf of Debtor Gillian Jordon aka Gillian Margaret Jordon-de Verteuil ("Debtor"); and it is further

**ORDERED,** that the Stipulation shall replace Claim No. 8 filed by WBL SPE III, LLC; and it is further

**ORDERED,** that, in the event that Debtor's bankruptcy case is dismissed, the terms of the Stipulation shall terminate; and it is further

**ORDERED,** that the adversary proceeding is now resolved and shall be marked "closed" by the Clerk of Court.

**Dated: November 12, 2025**
**Brooklyn, New York**

Nancy Hershey Lord

Nancy Hershey Lord
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Gillian Jordan<br>Aka Gillian Margaret Jordan-De Verteuil,<br><br>Debtor. | Chapter 11 (Subchapter V)<br><br>Case No.: 22-40568-nhl<br><br>Adv. Pro. No.: 1-23-01064-nhl |
| Gillian Jordan aka Gillian Margaret Jordan-De Verteuil,<br><br>Plaintiff,<br>v.<br><br>Doug Naidus,<br>World Business Lenders, LLC,<br>Worldwide Land Transfer Inc.<br>WBL SPE III, LLC,<br>The Bank of Lake Mills, and<br>John Does 1-3,<br><br>Defendants. | |

## STIPULATION

Debtor Gillian Jordan Aka Gillian Margaret Jordan-De Verteuil ("Debtor"), Doug Naidus ("Mr. Naidus"), World Business Lenders, LLC ("WBL"), WBL SPE III, LLC ("SPE III"), and The Bank of Lake Mills ("BLM"), stipulate as follows:

**WHEREAS,** on or about January 26, 2016, Debtor, on behalf of Noah's Ark Preparatory, Inc. and Noah's Ark Preparatory II, Inc., executed a Business Promissory Note and Security Agreement in favor of BLM in the original principal amount of $275,000.00 (the "Note"); and

**WHEREAS,** to secure the Note, Debtor executed a Continuing Guaranty (Unlimited) in favor of BLM, dated January 26, 2016; and

**WHEREAS,** to further secure the Note, Debtor executed a Mortgage, dated January 28, 2016, which was recorded against real property located at 455 Macon Street, Brooklyn, New York 11233 (the "Property") on February 18, 2016 in the Office of the City Register of the State of New York under CRFN 2016000054746, and which was subsequently assigned to SPE III (the Note, Guaranty, and Mortgage being the "Loan Documents" that, together with other documents, memorialize the "Loan"); and

**WHEREAS,** a default was declared on the Loan after the failure to tender the payment that became due and payable on April 19, 2016, and a commercial mortgage foreclosure action was commenced in the Supreme Court of the State of New York, County of Kings on July 19, 2016, which was assigned Index Number 512316/2016 and in which Judgment of Foreclosure and Sale was entered on March 18, 2020 (the "Foreclosure Action"); and

**WHEREAS,** the Foreclosure Action was automatically stayed after Debtor filed a Chapter 11 Bankruptcy Petition in the above-captioned case on March 23, 2022 (the "Bankruptcy"), and;

**WHEREAS,** SPE III filed a Proof of Claim on April 25, 2022 in the amount of $2,262,801.39 (the "Full Claim"), which Debtor disputed; and

**WHEREAS,** Debtor thereafter commenced the above-captioned adversary proceeding against Mr. Naidus, WBL, SPE III, and BLM, among other defendants, on August 13, 2023, in which opposed motions to dismiss have been filed and remain pending (the "Adversary Proceeding"); and

**WHEREAS,** Debtor, Mr. Naidus, WBL, SPE III, and BLM, having negotiated a resolution in principle with the assistance of Subchapter V Trustee Gerard Luckman, Esq., now wish to fully memorialize the resolution of any and all differences existing between them concerning the Loan and the Property in the Bankruptcy and the Adversary Proceeding,

**NOW THEREFORE,** Debtor, Mr. Naidus, WBL, SPE III, and BLM stipulate and agree as follows:

1. Within thirty (30) days of the date that this Stipulation is fully executed, Debtor agrees to withdraw her prior Chapter 11 Subchapter V Plan and file an Amended Chapter 11 Subchapter V Plan to which this Stipulation shall be appended, which shall include the following treatment of SPE III's claim, and the effective date of which shall be the date of entry of the order confirming same (the "Plan"):

   a. Debtor and SPE III agree that, subject to the conditions below, SPE III shall accept an allowed secured claim in the amount of $450,000.00 for which Debtor is liable in satisfaction of the Full Claim (the "Agreed Claim").

   b. The Agreed Claim shall be payable as follows:

      i. Debtor shall pay SPE III $1,000.00/month by the last business day of the month following the month in which the Effective Date of the Plan occurs, and by the last business day of each month thereafter, for a total of sixty (60) months (the "Term").

      ii. During the Term, interest shall accrue on the principal owed on the Agreed Claim at the rate of 5%.

      iii. Debtor shall pay SPE III the balance owed on the Agreed Claim by the last business day of the month following the conclusion of the Term.

      iv. At any time during the Term, Debtor may prepay any additional amount due on the Agreed Claim without penalty.

c. Notwithstanding anything in the Plan to the contrary, the Bankruptcy Court shall not retain jurisdiction with respect to the Agreed Claim, except for enforcing the discharge provisions of the confirmed Plan.

d. A failure by the reorganized Debtor to make a payment to SPE III pursuant to the terms of the Plan shall be an event of default. If the reorganized Debtor fails to cure an event of default as to Plan payments during the Term to SPE III within thirty (30) days after receipt of SPE III's written notice of default to be sent to Debtor and Debtor's Counsel via email, U.S. Mail, and filed on CM/ECF ("Uncured Default"), then SPE III, its successors and/or assigns may: (a) enforce the remaining balance of its Agreed Claim plus any accrued interest and attorney fees accrued in its enforcement of this agreement immediately and without further approval or release from the Bankruptcy Court against Debtor; (b) exercise any and all rights and remedies that SPE III, its successors and/or assigns, may have under applicable nonbankruptcy law, including but not limited to foreclosure, against Debtor and Borrowers; and/or (c) seek such further relief as may be appropriate in this Court. Debtor further agrees that in the event of an Uncured Default, the automatic stay shall be automatically lifted, and Debtor agrees not to directly or indirectly contest in any respect the Foreclosure Action and/or any efforts by SPE III, its successors and/or assigns, to exercise at their discretion any rights available at law and equity concerning the Loan and/or the Property.

e. A failure by the reorganized Debtor to pay the balance owed on the Agreed Claim by the last business day of the month following the conclusion of the Term shall be an event of default. If the reorganized Debtor fails to cure this event of default as to the balanced owed on the Agreed Claim to SPE III within sixty (60) days after receipt of SPE III's written notice of default to be sent to Debtor and Debtor's Counsel via email, U.S. Mail, and filed on CM/ECF ("Uncured Maturity Default"), then SPE III, its successors and/or assigns may: (a) enforce the remaining balance of its Agreed Claim plus any accrued interest and attorney fees accrued in its enforcement of this agreement immediately and without further approval or release from the Bankruptcy Court against Debtor; (b) exercise any and all rights and remedies that SPE III, its successors and/or assigns, may have under applicable nonbankruptcy law, including but not limited to foreclosure, against Debtor and Borrowers; and/or (c) seek such further relief as may be appropriate in this Court. Debtor further agrees that in the event of an Uncured Maturity Default, the automatic stay shall be automatically lifted, and Debtor agrees not to directly or indirectly contest in any respect the Foreclosure Action and/or any efforts by SPE III, its successors and/or assigns, to exercise at their discretion any rights available at law and equity concerning the Loan and/or the Property.

f. If Debtor requests a relaxation or amendment of the payment schedule from SPE III due to special circumstances, SPE III shall have the option in its sole discretion, but not the duty, to relax or amend the payments schedule

as SPE III, in its sole discretion, may see fit (which SPE III should not unreasonably withhold).

g. The failure of SPE III to insist on strict compliance by Debtor with any payment term of this Stipulation shall not constitute a waiver or relaxation of any future performance by Debtor of that term, nor shall such failure constitute a waiver or relaxation by SPE III of any other term of this Stipulation.

2. Upon the full execution of this Stipulation, the Adversary Proceeding, Debtor's complaint therein, and all claims that were asserted or could have been asserted by Debtor, are released and dismissed in their entirety, with prejudice, as against Mr. Naidus, WBL, SPE III, BLM, and any of their respective officers, directors, employees, agents, affiliates, and insurers and the pending motions to dismiss therein shall be administratively terminated.

3. If any provision of this Stipulation conflicts with any Order entered in this matter, including a confirmation order, the provisions of this Stipulation control.

4. This Stipulation shall take effect upon its execution by all parties, and shall be attached and become an exhibit to any confirmation order entered by the Bankruptcy Court.

*Signature Pages to Follow*

Date: 1/29/25

**GILLIAN JORDAN AKA GILLIAN MARGARET JORDAN-DE VERTEUIL**
*Debtor/Adversary Proceeding Plaintiff*

By: ______________________
Gillian Jordan Aka Gillian Margaret Jordan-De Verteuil

Date: 1/29/25

**THE LAW OFFICES OF NARISSA A. JOSEPH**
*Attorneys for Debtor/Adversary Proceeding Plaintiff,*
Gillian Jordan Aka Gillian Margaret Jordan-De Verteuil

By: ______________________________

Narissa A. Joseph, Esq.
305 Broadway, Suite 1001
New York, New York 10007
Telephone: (212) 233-3060
Email: njosephlaw@aol.com

Date: January 30, 2025

**HINSHAW & CULBERTSON LLP**
*Attorneys for Creditor/Adversary Proceeding Defendant,*
WBL SPE III, LLC
*Attorneys for Adversary Proceeding Defendants,*
Doug Naidus and World Business Lenders, LLC

By: *Daniel A. Schleifstein*
Daniel A. Schleifstein, Esq.
800 Third Avenue, 13th Floor
New York, New York 10022
Telephone: (212) 471-6200
Email: dschleifstein@hinshawlaw.com



98043\323499859.v1

Date: 1/31/25

**RIMON, P.C.**
*Attorneys for Adversary Proceeding Defendant,*
The Bank of Lake Mills

By: ______________________________
Anthony C. Acampora, Esq.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
Telephone: (516) 479-6300
Email: anthony.acampora@rimonlaw.com

# EXHIBIT D

*Exclusive Right to Sell Listing Agreement and Broker's License*

In re Gillian Jordon, Case No. 1-22-40568 (JMM)

## EXHIBIT D — LISTING AGREEMENT AND BROKER'S LICENSE

Annexed hereto as Exhibit D are (i) the executed Exclusive Right to Sell Listing Agreement, on the form of the Brooklyn New York Multiple Listing Service, Inc., between the Debtor, as owner, and Bluewater Capital Realty Corp., by Rosalind Bolden, Licensed Real Estate Broker, offering the Real Property at $2,000,000.00 with a commission of four percent (4%), running through December 31, 2026 subject to extension by its terms; and (ii) the broker's New York Department of State license (Unique ID No. 10311205107, effective November 12, 2024 through November 11, 2026). The Listing Agreement is incorporated as provided in Section 7.02; to the extent it conflicts with this Plan or the confirmation order, the Plan and the confirmation order govern, and the Broker's commission is payable only upon application to and allowance by the Court, not at closing.

# BROOKLYN NEW YORK MULTIPLE LISTING SERVICE, INC.
# LISTING AGREEMENT FOR PROPERTY

**Commission for the Sale, Lease or Management of Property Shall Be Negotiated Between the Listing Broker and the Seller**

## EMPLOYMENT

1. In consideration of the Broker's expertise, experience and knowledge as well as the Broker's efforts to market the subject property, the use of the service and facilities of the Broker's office and the Broker offering Agency to other Brokers participating in the Multiple Listing Service of BROOKLYN, NEW YORK (hereinafter "MLS") the undersigned owner grants the Broker an EXCLUSIVE RIGHT TO SELL the property known as 455 MACON STREET BROOKLYN NY 11233.

The listing expires at midnight on DECEMBER 31, 2026.

2. In the event owner signs a contract of sale during the term of this employment agreement, the parties agree that the above expiration date shall be extended until the time that said contract of sale is fully performed or until such time as said contract fails to be performed either by its terms or because of the default of the buyer. Nothing herein contained is intended to reduce the term of this agreement.

3. The owner authorizes the Broker to appoint the participants of the MLS, as Agents with respect to the performance of this agreement. The Broker shall appoint any other Agents or deal with any other Real Estate Brokers only when the Broker believes such appointment is in the owner's best interest. The owner shall be advised of all such appointments of Brokers not affiliated with the MLS and may object to such appointment. All such advice and objections shall be by written notice.

## REPRESENTATIONS OF BROKER

4. That in consideration of this EXCLUSIVE RIGHT OF SALE, Broker agrees:
a. To submit this listing to the MLS for distribution within two (2) business days of the Owner signing this Contract.

b. To use due diligence in procuring a purchaser for the above-described property.

## REPRESENTATIONS OF OWNER

5. That in consideration of the obligations of the Broker, Owner agrees:
a. That Owner warrants and certifies, to the best of their knowledge that all of the record title holders of the subject property, or their duly authorized agents, have signed this Contract in the space provided below and that there are no other signatures required on behalf of the Owner in order to grant broker the exclusive right to sell said Property.

b. That Owner shall immediately refer to Broker all inquiries pertaining to the sale and purchase of said Property.

c. That during the term of this Contract Broker shall have access to the Property and to the building or buildings on said Property for the purpose of showing the same at all reasonable hours by Broker or their agent, and should the Property be occupied by persons other than Owner, Owner agrees to notify the person(s) of the Broker's right to access, and Owner shall be responsible for the actions of any tenant or other persons in possession of the Property in permitting the Broker reasonable access of the Property.

d. That during the term of this Contract, Broker may place "For Sale" signs on the Property, unless said signs are prohibited by governmental authorities or matters of public record, in which case Owner agrees to notify Broker of said prohibited ordinance or restriction.

e. The broker may take and use photos of subject property for purpose of public and private display as a form of marketing subject property.

## PRICE OF SALE AND COMMISSION AMOUNT

6. The price at which said property is to be offered is $ 2,000,000.00 Dollars.

The owner hereby agrees to pay the Broker a commission of 4% under any of the following circumstances:

## WHEN COMMISSION IS EARNED

7. (a) When the Broker brings about a buyer ready, willing and able to buy on the terms set forth above; or (b) when the broker brings about a buyer ready, willing and able to buy at another price or on other terms to which the owner agrees or consents either verbally or in writing, or (c) when the broker is the procuring cause of sale consummated between the owner and a purchaser, or (d) if the owner finds a buyer for the property during the term of this agreement, or (e) if another Broker, finds a buyer during the term of this agreement.

The owner agrees and understands that the success of an Agent in accomplishing the result is the same as the Broker.
Compensation to Brokers Agent 1% Buyers Agent 1%

**THE SELLER IS UNDER NO OBLIGATION TO COMPENSATE A COOPERATING BROKER. IT IS THE SELLER, NOT THE LISTING BROKER, WHO HAS THE RIGHT TO ESTABLISH THE AMOUNT OF COMPENSATION, IF ANY, TO A COOPERATING BROKER.**

The owner(s) agrees and understands that should they employ any other Broker to sell, rent or exchange or otherwise dispose of the above property or any part thereof, and should said Broker be successful during the term of this agreement or should they personally sell, rent, exchange or otherwise dispose of the above property or any part thereof that they will be liable to the undersigned Broker for the amount of the commission set forth in this agreement.

## DISCLOSURE BY OWNER OF PROPERTY DEFECTS

8. Owner specifically acknowledges and understands that where Owner knows of facts materially affecting the value or desirability of the Property, whether said facts are readily observable or not readily observable, then Owner is under a duty to disclose said facts to the Buyer and to the Broker. If Owner knows of said facts, he shall set them forth in writing under the "Special Clauses" provision below or by written document attached to this Exclusive Right of Sale Listing Contract and presented upon execution of this Contract. Owner has fully reviewed this Contract and the information relative to said Property (as shown in the listing information above and/or the attached listing information sheet) and Owner warrants, to the best of his knowledge, the accuracy of said information. Owner agrees to indemnify and save harmless Broker and those relying thereon for damages resulting from the inaccuracy of said information and from Owner's failure to disclose any facts materially affecting the value or desirability of the Property.

## ARBITRATION

9. The merits of any dispute arising under or in connection with this agreement shall be determined by arbitration before an arbitrator in the county of New York, State of New York pursuant to the commercial arbitration rules then in effect with the American Arbitration Association. Judgment upon the award rendered may be entered in any court of competent jurisdiction. Should the disputed amount not exceed the jurisdictional limit of the Civil Court of the City Of New York, the parties may initiate an action in the Small Claims Division of that forum.

**IF YOU SIGN A SECOND EXCLUSIVE AGREEMENT DURING THE TIME OF THIS EXCLUSIVE AGREEMENT YOU MAY BE LIABLE FOR BOTH LISTING BROKERS COMMISSIONS**

OWNER: [signature] (Signature of Owner) ADDRESS: 455 MACON STREET, BROOKLYN NY 11233

OWNER: PHONE: RES: OFFICE:

DATE: 6/24/26 BROKER: BLUEWATERS CAPITAL REALTY CORP

LISTING SALESPERSON: ROSALIND BOLDEN ADDRESS: 132 W MERRICK RD, SUITE 689, FREEPORT NY 11520

BROKER'S SIGNATURE: Rosalind Bolden PHONE: 718-413-6570



TRANSACTIONS

I/WE HEREBY ACKNOWLEDGE RECEIPT OF A COPY OF THIS AGREEMENT:

The following explanations are provided for your review and signature:
(1) An "EXCLUSIVE RIGHT TO SELL" listing means that if you, the owner of the property find a buyer for your house, or if another broker finds a buyer, you must pay the agreed commission to the present broker.

(2) An "EXCLUSIVE AGENCY" listing means that if you, the owner of the property, find a buyer, you will not have to pay a commission to the broker. However, if another broker finds a buyer, you will owe a commission to both the selling broker and your present broker.

(3) I have been informed of a list of the participating BROKERS in the MLS, which is available on the MLS website - bnymls.com.

Signature of owner ______________________ Owner ______________________

**The Human Rights Law of the State of New York< prohibits a Broker from discriminating in the rental or sale of real property based upon Race, Creed, Color, National Origin, Sex, Age, Disability or Familial Status.**



TRANSACTIONS

FOR OFFICE USE ONLY
Control No. 2272157
24310-10

*State of New York*

# Department of State

## DIVISION OF LICENSING SERVICES

UNIQUE ID NUMBER
10311205107

**Be it known that, pursuant to the provisions of Article 12A of the Real Property Law**

BLUEWATER CAPITAL REALTY CORP
132 W MERRICK RD STE 6B9
FREEPORT NY 11520

EFFECTIVE DATE

| MO. | DAY | YR. |
|---|---|---|
| 11 | 12 | 2024 |

EXPIRATION DATE

| MO. | DAY | YR. |
|---|---|---|
| 11 | 11 | 2026 |

HAS BEEN DULY LICENSED TO TRANSACT
BUSINESS AS A REAL ESTATE BROKER
AND TO BE REPRESENTED BY
BOLDEN ROSALIND A

In Witness Whereof, The Department of State has caused its official seal to be hereunto affixed.

WALTER T. MOSLEY
SECRETARY OF STATE

DOS-104 (Rev. 4/03)

# EXHIBIT E

*Auction and Bidding Procedures*

In re Gillian Jordon, Case No. 1-22-40568 (JMM)

## EXHIBIT E — AUCTION AND BIDDING PROCEDURES

These procedures are annexed to and made part of the Plan and shall be approved by the order confirming the Plan. They take effect automatically, without further order, upon the filing of a notice under Section 7.07 that a milestone has not been met. The auction shall be held not later than March 2, 2027, and the closing thereon not later than March 20, 2027, so that payment in full of the secured and priority tax claims is made not later than March 23, 2027.

1. Conduct. The auction shall be conducted by the Subchapter V Trustee, in conjunction with counsel to the Debtor, through the auctioneer whose retention under 11 U.S.C. § 327 and Bankruptcy Rule 2014 is approved by the order confirming the Plan, effective upon the filing of a notice under Section 7.07, so that no further retention application is required. The auctioneer's compensation is payable from the proceeds of sale, subject to allowance by the Court.

2. Notice. Not less than twenty-one (21) days before the auction, notice of the date, time, place and terms of the auction shall be filed on the docket and served on the Subchapter V Trustee, the United States Trustee, the Internal Revenue Service, the New York State Department of Taxation and Finance, all lienholders, all creditors, and all parties in interest, and shall be published once in a newspaper of general circulation in Kings County.

3. Qualification. Any person may bid upon depositing with the Debtor's counsel, in escrow, certified funds equal to ten percent (10%) of the opening bid, and delivering proof of ability to close without financing contingency. The Debtor may credit no bid that is contingent upon financing, inspection, or further diligence.

4. Opening bid; increments. The opening bid shall be $1,700,000.00 or such other amount as the Court may fix in the confirmation order or by subsequent order. Bidding shall proceed in minimum increments of $25,000.00.

5. Credit bidding. Any holder of an allowed secured claim may credit bid the allowed amount of its claim to the extent permitted by 11 U.S.C. § 363(k) as incorporated through 11 U.S.C. § 1129(b)(2)(A)(ii) and § 1191(c)(1).

6. Highest and best offer; back-up bidder. The Subchapter V Trustee shall accept the highest and best offer and shall designate the next highest bidder as back-up bidder, whose bid shall remain irrevocable through the closing.

7. Approval and closing. The results of the auction shall be reported to the Court by filed notice within three (3) business days. Closing shall occur not later than March 20, 2027, and in all events in time to permit payment in full of the secured and priority tax claims of the Internal Revenue Service and the New York State Department of Taxation and Finance not later than March 23, 2027. Free-and-clear transfer is effected by the confirmed Plan and 11 U.S.C. § 1141(c), with all valid liens attaching to the proceeds in their existing priority.

8. Distribution. No proceeds of the auction shall be disbursed except pursuant to an order of the Court entered on the motion required by Section 7.09, and distribution shall follow Section 7.08.

9. Deposits. The deposit of the successful bidder shall be applied to the purchase price at closing and shall be forfeited to the estate if that bidder fails to close, whereupon the back-up bid shall be accepted. Deposits of unsuccessful bidders shall be returned within five (5) business days after the auction.

10. Transfer taxes. The transfer at the auction closing is made under the confirmed Plan and is exempt from stamp, transfer, recording and similar taxes under 11 U.S.C. § 1146(a), as provided in Section 7.10.